# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

<hr>

## NO. 03-06-00593-CV

<hr>

**Robert Spiegel, Appellant**

**v.**

**KLRU Endowment Fund; David Robb; Matthew Howard Robb; Andrew Osborn Robb; David Gamble Yorke; The Public for Animal Welfare, Inc.; and Westminster Presbyterian Church, Appellees**

<hr>

### FROM THE COUNTY COURT AT LAW NO. 2 OF HAYS COUNTY
### NO. 9886P, HONORABLE LINDA ANN RODRIGUEZ, JUDGE PRESIDING

<hr>

## O P I N I O N

Robert Spiegel appeals a declaratory judgment rendered in connection with the probate of his late wife Martha Spiegel's estate. The declaratory-judgment action, which was filed by the executor of Martha's[1] estate, David Robb, sought three declarations that are relevant to this appeal. First, Robb requested a declaration that a mediated settlement agreement signed by Martha and Robert in the context of pending divorce proceedings is enforceable even though it was never incorporated into a final divorce decree. Second, Robb asked for a declaration that a gift in Martha's will leaving "our homestead" to Robert adeemed because at the time of Martha's death, Robert lived in a separate residence that he had established as his tax homestead. Third, Robb sought a ruling

<hr>

[1] For convenience, we will refer to Robert Spiegel and Martha Spiegel by their first names.

clarifying what effect the mediated settlement agreement has on nonprobate assets that were awarded to Martha under the agreement but that designate Robert as a beneficiary.

The trial court held (1) that the mediated settlement agreement is enforceable, (2) that at the time of Martha's death, there did not exist any property that could be identified by the phrase "our homestead" in Martha's will, and (3) that Robert has no interest in any nonprobate assets allotted to Martha under the mediated settlement agreement, "whether by beneficiary designation or otherwise; . . . all beneficiary designations naming Mr. Spiegel are void and of no effect."

Robert appeals, arguing in three issues that the trial court erred (1) by declaring that the mediated settlement agreement is enforceable because it never was and never can be incorporated into a final divorce decree, (2) by holding that no property existed at the time of Martha's death that could be identified by the phrase "our homestead" in her will because Martha clearly meant to devise a residence located at 300 Plum Creek Lane in Dripping Springs, and (3) by ruling that Robert has no interest in nonprobate assets awarded to Martha under the mediated settlement agreement because the trial court lacked jurisdiction over nonprobate assets and because the mediated settlement agreement does not control the beneficiary designations of those assets. We will affirm the trial court's judgment.

**BACKGROUND**

Martha and Robert married in 1970. Martha was a librarian and an editor; Robert was an electrical engineer. In August 2000, Robert filed a divorce suit against Martha. The trial court presiding over the divorce ordered Martha and Robert to attend mediation. During the mediation in March 2002, Martha and Robert and their attorneys signed a mediated settlement agreement.

2

The agreement provides that Martha and Robert "agree that this lawsuit and all related claims and controversies between them are hereby settled." The agreement allocates the community property and community obligations, directing that each party receive the accounts and life insurance policies in his or her name and property in his or her possession and that each party be responsible for debts in his or her name. In addition, the mediated settlement agreement awards each party one vehicle and one residence—the Plum Creek residence to Martha, and a residence located at 1681 Buffalo Springs Crossing in New Braunfels to Robert. The agreement also obligates Martha to pay $170,000 to Robert, presumably to rectify an imbalance in the community assets allotted to and the community debts assumed by each party. The mediated settlement agreement states that it is a written settlement agreement under section 154.071 of the Texas Civil Practice and Remedies Code and a written agreement under Texas Rule of Civil Procedure 11 and provides, "THIS AGREEMENT CONSTITUTES A BINDING MEDIATED SETTLEMENT AGREEMENT. IT HAS BEEN REVIEWED BY BOTH PARTIES AND THEIR ATTORNEYS. THIS AGREEMENT WILL BE FILED WITH THE COURT AND IS NOT SUBJECT TO REVOCATION."

For more than two years after he signed the mediated settlement agreement, Robert unsuccessfully used various legal maneuvers attempting to rescind the agreement. Martha died on August 15, 2004, the day before the hearing to enter the final divorce decree was to occur.

Martha's will, dated July 29, 1999, leaves Robert "our homestead and my car," as well as various "personal and household effects." The will leaves half of Martha's residuary estate to her three nephews, Matthew Howard Robb, Andrew Osborn Robb, and David Gamble Yorke, and

3

half to several charities, including KLRU Endowment Fund, The Public for Animal Welfare, Inc., and Westminster Presbyterian Church.

David Robb, Martha's brother, after being appointed independent executor of Martha's estate under her will, filed a declaratory-judgment action in December 2004, seeking a construction of the will and a ruling concerning the effect of the mediated settlement agreement on various probate and nonprobate assets of the estate. Robert filed a motion for summary judgment, as did some of the residuary beneficiaries of Martha's estate. In March 2006, the trial court granted KLRU's motion for partial summary judgment, deciding all the issues relevant to this appeal as summarized above. The trial court then held an evidentiary hearing in which evidence was presented concerning a number of issues, including those already decided by the summary judgment. The trial court rendered a final judgment on July 5, 2006, which decided issues not addressed by the summary-judgment motion and "revised" part of the trial court's summary judgment. This appeal addresses issues on which testimony was presented to the trial court, although the issues were decided by summary judgment and not changed by the trial court in its final judgment.

## DISCUSSION

*Standard of Review*

Although this case presents a confusing procedural posture, our standard of review is certain because the trial court was presented with pure legal issues.

If we view the case as one decided by summary judgment, we use the following standard of review: Summary judgment is proper where the movant establishes that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law

4

on the issues expressly set out in the motion." Tex. R. Civ. P. 166a(c). We review the summary judgment de novo, take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, we review the evidence presented, determine the questions presented, and render the judgment the trial court should have rendered if we determine that it erred. *Id.*

Even if we take the view that this case was not decided by summary judgment, the trial court was presented with pure legal questions: whether the mediated settlement agreement is enforceable under the family code, interpretation of the phrase "our homestead" in Martha's will, and whether the mediated settlement agreement revoked beneficiary designations in Robert's favor. We review the trial court's legal conclusions de novo. *MCI Telecomms. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).

Thus, whether this case is viewed as one decided by summary judgment or by trial to the court, we use a de novo standard of review.

### *Mediated Settlement Agreement*

In his first issue, Robert argues that the trial court erred by holding that the mediated settlement agreement is enforceable. Robert urges that although he and Martha intended to make a mediated settlement agreement pursuant to section 6.602 of the family code, the agreement is unenforceable because Martha's death precluded any possibility that the agreement can be incorporated into a final divorce decree as intended by the parties. This issue is one of first

5

impression. Although both sides have pointed us to authority from other jurisdictions, none of those cases involved a statute similar to the one at issue in this case. We base our holding that the trial court did not err by declaring that the agreement is enforceable on the plain language of the statute and the public policy underlying it, as well as the parties' intent as expressed in the language of the agreement.

Spouses in Texas have multiple ways to approach division of their community property in anticipation of divorce. Section 7.006 of the family code provides for settlement agreements that "may be revised or repudiated before rendition of the divorce" and that must be approved by the judge presiding over the divorce case. Tex. Fam. Code Ann. § 7.006 (West 2006).

Section 6.602 of the family code, in contrast, allows spouses to enter into settlement agreements that are immediately binding and do not require the approval of the court. Tex. Fam. Code Ann. § 6.602 (West 2006); *In re Joyner*, 196 S.W.3d 883, 889 (Tex. App.—Texarkana 2006, pet. denied) (holding that section 6.602 mediated settlement agreements are immediately binding); *Cayan v. Cayan*, 38 S.W.3d 161, 166–67 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (same). Section 6.602 provides, in relevant part,

> (b) A mediated settlement agreement is binding on the parties if the agreement:
>
> > (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
> >
> > (2) is signed by each party to the agreement; and
> >
> > (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

6

(c) If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

Tex. Fam. Code Ann. § 6.602.

The mediated settlement agreement at issue in this case contains a prominently displayed statement, in capital letters and underlined, that the agreement is "not subject to revocation" and was signed by Martha, Robert, and their respective attorneys. If a mediated settlement agreement meets the statute's requirements, it must be enforced in the absence of allegations that the agreement calls for the performance of an illegal act or that it was "procured by fraud, duress, coercion, or other dishonest means." *Boyd v. Boyd*, 67 S.W.3d 398, 403 (Tex. App.—Fort Worth 2002, no pet.). Because Robert has made no such allegations, the mediated settlement agreement "is binding." *See* Tex. Fam. Code Ann. § 6.602.

Robert contends that because section 6.602 is contained within chapter 6 of subtitle C of the family code, which governs suits for dissolution of marriage, the mediated settlement agreements that it contemplates are intended to be effective only upon the entry of a final divorce decree. We believe, however, that the statute's placement in the family code is better explained by subsection (a), which provides that "[o]n the written agreement of the parties or on the court's own motion, the court may refer *a suit for dissolution of a marriage* to mediation." *Id.* § 6.602(a) (emphasis added). Further, by providing that when an agreement meets the requirements of section 6.602, the agreement "is binding" and "a party is entitled to judgment" on it, the statute shows the legislature's intention that the agreement be binding even in the absence of a judgment incorporating it.

7

The public policy underlying section 6.602, as ably described by our sister court, also suggests that the mediated settlement agreement should be held enforceable even in the absence of a divorce decree incorporating it:

> [T]he purpose of alternative dispute measures is to keep parties out of the courtroom. Where a mediated settlement agreement is not summarily enforceable, the trial court is then faced with litigating the merits of not only the original action but also the enforceability of the settlement agreement, thereby generating *more*, not less, litigation. Enforcing mediated agreements as of the time they are entered rather than later also encourages parties to avail themselves of mediation by giving them greater assurance of a prompt and final resolution. Further, parties are more likely to mediate in good faith if they know their agreement will be enforced. Therefore, effecting the plain meaning of section 6.602 is supported by public policy.

*Cayan*, 38 S.W.3d at 166 (internal citations omitted). Although the mediated settlement agreement in *Cayan* was incorporated into a final divorce decree, the court's reasoning applies with the same force regardless of whether a final decree is obtained.

The plain language of the agreement also indicates that the parties intended that the agreement be immediately effective. The agreement states that "[t]he parties hereto agree that this lawsuit and all related claims and controversies between them *are hereby settled*," that "this *is* a compromise of a disputed claim," and that "the parties *hereby agree* to release, discharge, and forever hold the other harmless from any and all claims, demands, or suits . . . arising from or related to the events and transactions which are the subject matter of this cause." (Emphases added.) Additionally, the agreement provides, as mentioned above, that it is a written settlement agreement under section 154.071 of the civil practice and remedies code, that it is a written agreement under

8

Texas Rule of Civil Procedure 11, and that it is "a binding mediated settlement agreement" that "is not subject to revocation."

Robert could have made an agreement under section 7.006 of the family code if he desired to enter into a settlement agreement that could be rescinded and would not be enforceable until approved by the court. Instead he chose to make an agreement under section 6.602 that became binding immediately after it was signed. We overrule Robert's first issue.[2]

### Homestead

In his second issue, Robert claims that the trial court erred by declaring that no property existed at the time of Martha's death that could be identified by the phrase "our homestead" and that the devise therefore adeemed. Robert argues that because at the time Martha wrote her will in 1999, her use of the phrase "our homestead" referred to the Plum Creek residence where she lived with Robert, her intent can only be effectuated by declaring that the Plum Creek residence should pass to Robert under her will. We find that this contention lacks merit because Robert lived in a separate residence that he established as his tax homestead at the time of Martha's death and because he agreed that Martha would keep the Plum Creek residence as her separate property.

A will speaks at the time of the testator's death. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 642 (Tex. 2000). In construing a will, the court's focus is on the testator's intent, which must be ascertained from the language within the four corners of the will. *Id.* at 639.

---

[2] The appellees argued other bases of the agreement's enforceability to the trial court, including an argument that the agreement meets the requirements of a partition agreement. Because we have held that the agreement is binding as a mediated settlement agreement under section 6.602 of the family code, we do not address Robert's arguments in response to those contentions.

9

Ademption describes the extinction of a specific devise because of the disappearance of the subject matter of the devise. *Id.* at 641–42.

Robert contends that because the Plum Creek residence still physically existed and had not been sold at the time of Martha's death, the doctrine of ademption cannot apply to the devise. Robert would be correct if Martha had left the Plum Creek residence to him in her will; however, Martha devised "our homestead" to Robert, and no property could be identified by that phrase at the time of Martha's death, which is when her will speaks.

"Our" means "of or belonging to us or ourselves." *Webster's Third New International Dictionary* 1599 (Philip Babcock Gove et al. eds., 1986). "Homestead" is defined by the property code as a place "used for the purposes of an urban home" or "a rural home." Tex. Prop. Code Ann. § 41.002(a)–(b) (West 2000). A person can abandon a homestead by discontinuing use of the property as a home and having an intention not to use it as a home again. *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 808 (Tex. App.—Austin 2004, pet. denied).

Although the phrase "our homestead" may have accurately identified the Plum Creek residence when Martha authored her will in 1999, the evidence presented in this case conclusively proves that Robert had abandoned the Plum Creek residence as his homestead by the time of Martha's death. On February 6, 2001, Robert filed an application to establish a house in New Braunfels as his tax homestead. In the application, Robert averred that the New Braunfels home was his homestead on January 1, 2001, and that he had not claimed a residence-homestead exemption on any other property. In addition, Robert agreed in the 2002 mediated settlement agreement, which

10

we have held was immediately enforceable, to Martha's keeping the Plum Creek residence as her separate property.

Because Robert discontinued using the Plum Creek residence as his home and because he had an intention not to use it as his home again, as evidenced by his application for a residence-homestead exemption on the New Braunfels home and his agreement that Martha would keep the Plum Creek residence as her separate property, the phrase "our homestead" in Martha's will did not refer to the Plum Creek residence at the time of her death. Consequently, the devise of "our homestead" to Robert adeemed, and the Plum Creek residence became part of Martha's residuary estate. We overrule Robert's second issue.

### *Beneficiary Designations of Nonprobate Assets*

In his third issue, Robert urges that the trial court erred by declaring that the mediated settlement agreement revokes beneficiary designations in favor of Robert with respect to nonprobate assets in Martha's estate, arguing that the trial court lacked jurisdiction over nonprobate assets and that the mediated settlement agreement refers only to ownership interests and not beneficial interests. We disagree with both contentions.

#### **Jurisdiction**

The probate code provides that county courts have the general jurisdiction of probate courts and shall "transact all business appertaining to estates subject to administration." Tex. Prob. Code Ann. § 4 (West 2003). "All courts exercising original probate jurisdiction shall have the power to hear matters incident to an estate." *Id.* § 5(f) (West Supp. 2006). The phrases "appertaining to estates" and "incident to an estate" are defined by the probate code to include "all claims by or against an estate, . . . all actions for trial of the right of property, . . . and generally all matters relating

11

to the collection, settlement, partition, and distribution of estates of deceased persons." *Id.* § 5A(a) (West Supp. 2006).

The Uniform Declaratory Judgments Act provides that an executor "may have a declaration of rights or legal relations in respect to the . . . estate . . . to determine any question arising in the administration of the . . . estate, including questions of construction of wills and other writings." Tex. Civ. Prac. & Rem. Code Ann. § 37.005(3) (West Supp. 2006).

Robb's declaratory-judgment action, by seeking a declaration concerning what effect the mediated settlement agreement has on the beneficiary designations of nonprobate assets in Martha's estate, sought a construction of a writing that relates to the distribution of Martha's estate. "Furthermore, the outcome of this suit will have a direct bearing on the assimilation, collection, and distribution of [Martha]'s estate." *English v. Cobb*, 593 S.W.2d 674, 676 (Tex. 1979). Therefore, the county court had jurisdiction over Robb's declaratory-judgment action.

### Mediated Settlement Agreement and Beneficial Interests

Texas courts of appeals are divided with respect to what language is necessary in a settlement agreement or divorce decree to revoke beneficiary designations. The Dallas court has held that the allocation of an insurance policy to one spouse as her separate property is sufficient to revoke a beneficiary designation for that policy in favor of the other spouse. *McDonald v. McDonald*, 632 S.W.2d 636, 639 (Tex. App.—Dallas 1982, writ ref'd n.r.e.). Other courts have held that additional language referring to beneficial interests is required. *E.g.*, *Pitts v. Ashcraft*, 586 S.W.2d 685, 696 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.); *Partin v. de Cordova*, 464 S.W.2d 956, 956–57 (Tex. Civ. App.—Eastland 1971, writ ref'd).

We believe that the Dallas court's approach is better because it incorporates the presumption that people who are divorcing intend to revoke beneficiary designations in favor of their soon-to-be ex-spouses in the absence of explicit language to the contrary. This presumption comports with common sense and has been mandated by the legislature in the vast majority of cases. *See* Tex. Fam. Code Ann. §§ 9.301 (providing that divorce revokes a pre-divorce designation of a former spouse as a beneficiary for a life-insurance policy unless certain conditions are met), 9.302 (West 2006) (providing for revocation by divorce of pre-divorce designations of former spouses as beneficiaries for other assets unless certain conditions are met, but excepting certain assets); *Jernigan v. Scott*, 518 S.W.2d 278, 284 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.) ("The most reasonable intention which can be ascribed to parties contemplating separation and desirous of adjusting questions relating to property rights is an intention to make an arrangement relating to the future as well as the present and past, rather than an intention limited to existing conditions . . . . In interpreting such an agreement, this intention should be given effect, unless the language used indicates the contrary.").

In addition, the cases holding that divorce decrees and settlement agreements did not revoke beneficiary designations were all decided in the context of a final divorce, and the courts consistently emphasized the ability of the decedents to change beneficiaries during their lifetimes and their failure to do so. *See, e.g.*, *Parker v. Parker*, 683 S.W.2d 889, 890 (Tex. App.—Fort Worth 1985, writ ref'd); *Ashcraft*, 586 S.W.2d at 695–96; *Partin*, 464 S.W.2d at 957. Here, Martha had no opportunity to change beneficiaries. David Robb testified that even though Martha was allotted the accounts at issue in the mediated settlement agreement, she was unable to change the beneficiary

designations on these assets without Robert's consent while she was still married because of ERISA regulations.

Even if we were to hold that additional language is required to revoke beneficial interests, the mediated settlement agreement signed by Martha and Robert contains language indicating the parties' intent to immediately and completely sever their financial relationship. The agreement includes a broad release by each party of any future claims or demands against the other party "arising from or related to the events and transactions which are the subject matter of this cause." The agreement states that the release runs to the benefit of the parties' attorneys, heirs, and legal representatives, among others. The release supports our holding that the mediated settlement agreement revokes beneficiary designations in favor of Robert.

Because the mediated settlement agreement was immediately binding and revoked beneficiary designations in favor of Robert, the trial court did not err in holding that Robert has no interest in any nonprobate assets allotted to Martha under the mediated settlement agreement, "whether by beneficiary designation or otherwise." We overrule Robert's third issue.

## CONCLUSION

Having overruled all Robert's issues, we affirm the trial court's judgment.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed: April 26, 2007

14