Opinion issued March 6, 2008








                   




     





In The
Court of Appeals
For The
First District of Texas




NO. 01-07-00231-CV




MARIA REYNA OLVERA, Appellant

V.

JOSE PABLO OLVERA, Appellee




On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2006-01334




MEMORANDUM OPINION



          Appellant, Maria Reyna Olvera, appeals the trial court’s granting of a final
decree of divorce based on a mediated settlement agreement (“MSA”). 
          In two issues, Maria contends (1) that her consent to the MSA was procured
by fraud and (2) that appellee, Jose Pablo Olvera, was permitted to “prove up” the
divorce “ex parte,” which was improper.
          We affirm.
Facts and Procedural History
          In January 2006, Jose filed for divorce from his wife, Maria, who responded
with an answer and a counter-petition. On July 6, 2006, the parties and their
attorneys attended mediation, where the parties entered into a mediated settlement
agreement (“MSA”). The MSA, signed by Jose and Maria and their respective 
attorneys, divided the marital assets, provided for conservatorship of the children and
child support, and provided that the agreement was final and irrevocable.
          Pursuant to the MSA, Maria was awarded four properties on Brady Lane in
Tomball, Texas (“the Brady properties”), that the Olveras had purchased during their
marriage from Elidio Flores, under a contract for deed. On the Brady properties were
mobile home trailers that the Olveras owned free of any liens and that they rented out. 
During the divorce, the Olveras fell behind on their payments to Flores on the land. 
In the MSA, the parties agreed that Maria would receive all rents earned on these
properties, but that she was responsible for the payment of all associated debt. 
          At some point prior to the mediation, Maria and Flores had entered into a
written agreement providing that if Maria was awarded the Brady properties in the
MSA and if she paid Flores the outstanding sums in full by July 31, 2006, Flores
would allow Maria to redeem the properties. Although Maria was awarded the Brady
properties in the MSA, she was unable to pay the outstanding debt by July 31, 2006
and was unable to redeem the properties under her agreement with Flores. Maria
contends that she made multiple attempts to tender the money to Flores, but that he
refused to honor their agreement. 
          On December 12, 2006, Maria moved to set aside the MSA on the ground that
her consent to the MSA had been fraudulently procured. Specifically, Maria
contended that Jose knew at the time of the mediation and the execution of the MSA
that the Brady properties no longer belonged to the community or that he colluded
with Flores to transfer the Brady properties out of the community. Jose moved to
enforce the MSA and for a final decree on the MSA. 
          On January 19, 2007, the trial court conducted a hearing on Maria’s motion to
set aside the MSA and on Jose’s motion to sign the decree. Maria, through her
counsel, asserted that there had been “a secret agreement” between Jose and Flores,
pursuant to which Flores would rescind his agreement with Maria and Jose “would
reap the profits on” the Brady properties. Jose, through his counsel, contended that
the properties were listed on the parties’ inventories and that Maria was fully aware
of the status of default on the properties at the time the MSA was executed, as
evidenced by her pre-mediation agreement with Flores to redeem the properties. 
          At the close of the hearing, Jose urged that, even if Maria might have a breach
of contract claim against Flores, Jose was nevertheless entitled to enforcement of the
MSA and a final decree on the MSA. The trial court agreed and asked for the
prepared order. When the trial court asked for the required parenting class certificates,
however, Jose had left his at home. The trial court instructed Jose to go and retrieve
it by 3:00 p.m. or the case would be dismissed. Jose and his attorney returned that
afternoon, but Maria and her attorney did not. The trial court denied Maria’s motion
to set aside the MSA and granted a final decree of divorce. 
          The trial court’s findings of fact were that the parties and their attorneys
attended mediation and entered into an MSA. In addition, the court found that there
was prominently displayed language in the MSA specifying that it was not subject to
revocation. Further, the court found that, after the January 17, 2007 hearing, the
divorce had been “proven up”; that there was no evidence that Jose made a material
misrepresentation that was false, that was known to be false when made or was
asserted without knowledge of its truth, that was intended to be acted upon, was
relied on, and that caused injury to Maria; and there was no evidence that Jose
engaged in a conspiracy to fraudulently induce Maria into signing the MSA. The
trial court’s conclusions of law were that the MSA met all the requirements of section
6.602(b) of the Family Code; that the “Agreed Final Decree of Divorce” conformed
with the MSA and met all the prerequisites required by law, including the division of
the marital estate and conservatorship of the children; that Jose was entitled to
judgment on the MSA under section 6.602(c) of the Family Code; and that the
divorce was granted. 
          Maria moved for a new trial, contending, in part, that the trial court erred by
granting the final decree because the trial court “took no evidence and no party
‘proved up’ the divorce” at the January 17, 2007 hearing. Maria contended that the
MSA “does not provide evidence to satisfy the Family Code’s requirements for proof
to support a divorce.” In addition, Maria re-urged that Jose conspired with Flores to
fraudulently induce her to sign the MSA. After a hearing, the trial court denied
Maria’s motion for new trial.
Evidence to Support the Decree
          In her second issue, Maria contends that appellee, Jose Olvera, was permitted
to “prove up” the divorce “ex parte,” which was improper. Maria contends that the
MSA was not sufficient, on its own, to entitle Jose to the granting of the divorce
decree.
          An MSA is binding on the parties if it:
          (1)     provides, in a prominently displayed statement that is in
boldfaced type or capital letters or underlined, that the agreement
is not subject to revocation;
          (2)     is signed by each party to the agreement; and
          (3)     is signed by the party’s attorney, if any, who is present at the time
the agreement is signed.



Tex. Fam. Code Ann. § 6.602(b) (Vernon 2006).




          The record shows that Maria and Jose entered into an MSA, that was signed
by Jose and Maria and their respective attorneys, and that provided, in a separate
paragraph, in English and in Spanish, and was emphasized as follows: “WARNING
THIS AGREEMENT IS FINAL AND IS NOT SUBJECT TO REVOCATION.” 
Hence, the MSA at issue herein meets the requirements of section 6.602(b). See id.

          When, as here, an MSA meets the requirements of section 6.602, “a party is
entitled to judgment” on the MSA, “notwithstanding Rule 11, Texas Rules of Civil
Procedure, or another rule of law.” Id. § 6.602(c). Agreements under section 6.602
are immediately binding, even in the absence of a divorce decree incorporating it. 
Tex. Fam. Code Ann. § 6.602; Spiegel v. KLRU Endowment Fund, 228 S.W.3d 237,
241 (Tex. App.—Austin 2007, pet. denied); In re Joyner, 196 S.W.3d 883, 889 (Tex.
App.—Texarkana 2006, pet. denied). Compliance with section 6.602 makes the
agreement an exception to section 7.006, which allows revision and repudiation of
settlement agreements. See Tex. Fam. Code Ann. § 7.006 (Vernon 2006) (providing
that settlement agreements “may be revised or repudiated before rendition of the
divorce” and must be approved by trial court); Joyner, 196 S.W.3d at 889. An
agreement under section 6.602 may be ruled on without a determination that its terms
are just and right. Joyner, 196 S.W.3d at 889. 

          Maria does not dispute that the MSA herein complies in all respects with
section 6.602(b). Hence, the MSA is “binding on the parties,” and Jose was entitled
to judgment on the MSA. See Tex. Fam. Code Ann. § 6.602(c). “The statute
requires the trial court to render judgment on a Section 6.602 agreement, even if one
party attempts to withdraw consent.” Joyner, 196 S.W.3d at 890. 

          As the court recognized of the appellant in Spiegel, Maria could have made an
agreement under section 7.006 of the Family Code if she desired to enter into a
settlement agreement that could be rescinded and would not be enforceable until
approved by the court. Spiegel, 228 S.W.3d at 243. Instead, she chose to make an
agreement under section 6.602 that became binding immediately after it was signed. 
See id. 

          We hold that the MSA meets the requirements of section 6.602, and thus the
trial court did not err by entering the order enforcing the parties’ agreement. See Tex.
Fam. Code Ann. § 6.602(c); Beyers v. Roberts, 199 S.W.3d 354, 359 (Tex.
App.—Houston [1st Dist.] 2006, pet. denied).

          Accordingly, Maria’s second issue is overruled. 

Fraudulent Inducement

          In her first issue, Maria contends that, even if the MSA meets the requirements
of section 6.602, the trial court erred by enforcing the MSA because her consent was
fraudulently procured. Maria points to her testimony presented at the hearing on the
motion for new trial and asks this court to reverse and remand for a new trial.

          We review a trial court’s denial of a motion for new trial for an abuse of
discretion. In re R.R., 209 S.W.3d 112, 114 (Tex. 2006); Cont’l Cas. Co. v. Hartford
Ins., 74 S.W.3d 432, 434–35 (Tex. App.—Houston [1st Dist.] 2002, no pet.). The
trial court abuses its discretion if it acts unreasonably or in an arbitrary manner,
without reference to guiding rules or principles. Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241–42 (Tex. 1985). 

 
          An MSA that meets the statute’s requirements must be enforced unless there
is an allegation that it was “procured by fraud, duress, coercion, or other dishonest
means.” Joyner, 196 S.W.3d at 890; Boyd v. Boyd, 67 S.W.3d 398, 403 (Tex.
App.—Fort Worth 2002, no pet.). Here, Maria alleged that the MSA was procured
by fraud. 

          A fraudulent inducement claim requires evidence (1) that Jose made a material
misrepresentation that was false, (2) that was either known to be false when made or
was asserted without knowledge of its truth, (3) that it was intended to be acted upon,
(4) that it was relied on, and (5) that such reliance caused Maria injury. See Formosa
Plastics Corp. USA v. Presidio Engineers and Contractors, Inc., 960 S.W.2d 41, 47
(Tex. 1998).

          The record shows that, at the January 19, 2007 hearing on Maria’s motion to
set aside the MSA, Maria’s counsel presented Maria’s theory of fraudulent
inducement to the trial court, but Maria did not testify and did not present any
evidence. 

          In her affidavit in her motion for new trial, Maria attested that Jose called her
after the mediation, asked if she would come back to him, and that she refused. Maria
attested that Jose told her that he would tell Flores not to let her redeem the
properties. In addition, Maria attested that when she tried to pay Flores, he would not
meet with her. However, Maria could only speculate as to the existence of an
agreement between Jose and Flores, as follows, in pertinent part: 

While I do not know the exact terms of the agreement, it is apparent that
the essential terms of the agreement were that [Flores] would sign a
document stating that if I was awarded the [Brady properties] then
[Flores] would allow me to redeem those properties despite the fact the
[Jose] and I were currently in default on payment of those properties. 
Then [Jose] anticipated that I would ask for and receive [the Brady
properties] at the Mediated Settlement Conference. Finally, [Flores] and
[Jose] agreed that once I had the properties, [Jose] had the power to tell
[Flores] whether to perform under the contract based on whether I
agreed to take [Jose] back as my husband.

 
At the hearing on the motion for new trial, Maria explained that she had subpoenaed
Flores to appear at the hearing on the entry of the decree, but that Flores did not
appear. Maria contends that, nevertheless, Jose failed to controvert her assertions. 

          As Jose contends and the trial court found, Maria did not offer evidence that
Jose made any specific material misrepresentation that was false, that was known to
be false when made or was asserted without knowledge of its truth, that was intended
to be acted upon, was relied on, and that caused injury to Maria. In addition, Maria
did not present any evidence, beyond her speculation, that Jose engaged in a
conspiracy to fraudulently induce Maria into signing the MSA. 

          It is undisputed that Maria was fully aware of the status of default on the
properties at the time the MSA was executed, as evidenced by her pre-mediation
agreement with Flores to redeem the properties. 

          “The trial court serves as fact finder at a hearing on a motion for a new trial
and, accordingly, is the sole judge of the witnesses’ credibility.” Shull v. United
Parcel Serv., 4 S.W.3d 46, 51 (Tex. App.—San Antonio 1999, pet. denied). Here, the
trial court did not, nor was it compelled to, accept Maria’s testimony that she was
fraudulently induced to sign the MSA.

          We conclude that the record supports the trial court’s ruling. We hold that the
trial court did not abuse its discretion by denying Maria’s motion for new trial.

          Accordingly, Maria’s second issue is overruled.

CONCLUSION

          We affirm the judgment of the trial court.





                                                             Laura Carter Higley 

                                                             Justice

 
Panel consists of Justices Nuchia, Hanks, and Higley.