Opinion issued December 8, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00163-CV

———————————

Jill J. Moore, Appellant

V.

Billy Joe
Moore, Appellee



 



 

On Appeal from the 300th District Court

Brazoria County, Texas



Trial Court Case No. 53437

 



 

MEMORANDUM OPINION

          Jill J. Moore appeals the trial
court’s final decree of divorce entered after she had reached a mediated
settlement agreement (MSA) with her husband, Billy Joe Moore.  In her sole issue, Jill argues that the trial
court abused its discretion by entering a decree inconsistent with the terms of
the MSA.  Finding error, we reverse in
part, reform in part, and affirm in part. 


Background

Jill and
Billy Joe entered into a mediated settlement of their divorce case that divided
their marital estate, provided for conservatorship of their five children, and
established child support.  The MSA,
signed by Billy Joe, Jill, and their respective attorneys, provided in
boldfaced, capitalized, and underlined type that it was “NOT SUBJECT TO REVOCATION” and that Billy Joe and Jill were
“ENTITLED TO JUDGMENT”
thereon.  To resolve future disagreements
with respect to the MSA, the parties agreed to submit:  

(a) all drafting disputes;
(b) all issues regarding the interpretation of this Mediated Settlement
Agreement; and (c) all issues regarding the intent of the parties as reflected
in the Mediated Settlement Agreement to [the mediator], whose decision shall be
binding on the parties, including decisions on the payment for additional
mediation fees (if any).

 

After the trial court rendered
judgment on the MSA and while the parties were drafting the final decree of
divorce, a dispute arose regarding the division of future disbursements from
Billy Joe’s employee stock ownership plan (ESOP).  

The MSA divided Billy Joe’s employment
benefits as follows:



Jill contended that this division entitled her to
fifty percent of all Billy Joe’s “future retirement disbursements,” including
disbursements from his 401(k) plan and his ESOP.  Billy Joe agreed that Jill was entitled to
fifty percent of the future disbursements from his 401(k) plan, but not from
his ESOP.  As provided in the MSA, they submitted
their dispute to the mediator.

The mediator issued three separate
letters announcing his decision.  In his
first letter, the mediator stated his recollection that the parties intended to
“split” the 401(k) plan, grant one hundred percent of the ESOP to Billy Joe,
and “split” the “future retirement disbursement 
. . . 50/50 between the parties.” 
With respect to the language dividing the “future retirement disbursements,”
the mediator instructed that specific language be included in the divorce
decree:

W-6:  50.00% of Billy Joe Moore’s future retirement
disbursements from ISI Specialist, Inc. and/or Brand Industrial Specialist, LLC
arising out of Billy Joe Moore’s employment with ISI Specialist, Inc. and/or
Brand Industrial Specialist, LLC as will be more particularly defined in a
Qualified Domestic Relations Order entered by this Court.

 

 

Three months later, the mediator
issued a second letter regarding the scope of the “future retirement
disbursements.”  He wrote that he could
“not recall that the parties were aware of whether item 15 [the ESOP] was
separate from or a part of item 16 [the future retirement disbursements].  However, it is clear from my notes, my recollection,
and the Mediated Settlement Agreement, that Mr. Moore was awarded 100.00% of
item 15.  Save and except for item 15,
then whatever value was left in or left over from item 16 was then awarded on a
50/50 basis.”  Thus, in both his first
and second letters, the mediator seemingly agreed with Billy Joe’s construction
of the MSA, concluding that Jill was not entitled to future disbursements from
the ESOP because it had been awarded solely to Billy Joe.  

          Apparently
these two letters did not finally resolve the parties’ dispute about “future
retirement disbursements” because the mediator issued a third letter.  In it he stated that he was “aware of
everyone’s concerns and the practical effect that certain language may or may
not have.”  He then suggested the
following language for the division of Billy Joe’s employee benefits, which was
different from the previously suggested language and more in agreement with
Jill’s construction of the MSA:

H-3    Fifty percent (50.00%) of Industrial
Specialists, Inc. 401(k) Plan; Balance: unknown

 

H-4    One hundred percent (100.00%) of the balance
of ISI Specialists, Inc. Employees’ Stock Ownership Plan; Plan No. 4-51128, as
of August 11, 2009 with an approximate balance of $46,765.44.

 

H-5    Save and except for that portion awarded to
Billy Joe Moore in Item H-4, fifty percent (50.00%) of all future retirement
disbursements arising out of Billy Joe Moore’s employment with ISI Specialist,
Inc. and/or Brand Industrial, whether from retirement or participation in the
employee stock ownership plan.

 

W-5   Fifty percent (50.00%) of Billy Joe Moore’s
interest in Industrial Specialists, Inc. 401(k) Plan as of January 26, 2010
arising out of Billy Joe Moore’s employment with Industrial Specialist, Inc.
and more particularly defined in a Qualified Domestic Relations Order which will
be entered with this court.

 

W-6
  Save and except for that portion awarded
to Billy Joe Moore in item H-4, fifty percent (50.00%) of all future retirement
disbursements arising out of Billy Joe Moore’s employment with ISI Specialist,
Inc. and/or Brand Industrial, whether from retirement or participation in the
employee stock ownership plan, and more particularly defined in a Qualified
Domestic Relations Order to be entered by this Court.

 

          Jill
and Billy Joe then sought entry of the final divorce decree in the trial
court.  In their proposed decrees, they
offered competing provisions with respect to the future disbursements from
Billy Joe’s ESOP.  Jill’s tender incorporated
the language used in the mediator’s third and final letter, whereas Billy Joe’s
tender was consistent with the mediator’s first two announcements.  

The court, finding that the
mediator’s letters were not “helpful because they’re 180 degrees opposite of
each other,” entered a final decree dividing the employee benefits in the
manner proposed by Billy Joe and suggested in the mediator’s first and second
letters.  

          Property to Husband

          

H-3.   50% of Industrial Specialists,
Inc. 401(k) Plan; Balance unknown

 

          H-4.   100% of ISI Specialists, Inc. Employees Stock Ownership Plan;

 

          H-5.   50% of all future retirement disbursements due to Bill[y] Joe
Moore’s employment and the benefits arising from such employment with ISI
Specialist, Inc. and/or Brand Industrial, save and
except 100% of the Employee Stock Ownership Plan which is awarded solely to
Billy Joe Moore.

          

          Property to Wife

          

W-5.  50% of Billy Joe Moore’s interest
in Industrial Specialists, Inc. 401(k) Plan as of January 26, 2010 arising out
of Billy Joe Moore’s employment with Industrial Specialist, In[c].
and more particularly defined in a Qualified Domestic
Relations Order which will be entered with the Court.

 

          W-6.  50% of Billy Joe Moore’s future retirement disbursements from ISI
Specialist, Inc. [a]nd/or Brand Industrial
Specialists, save and except for 100% of the Employee Stock Ownership Plan
which is awarded solely to Billy Joe Moore here in [sic], and more particularly
defined in a Qualified Domestic Relations Order which will be entered with this
court.

 

          Jill,
arguing that the construction and language provided by the mediator in his
third letter was binding on the parties and the trial court, appeals the
divorce decree on the ground that its terms “vary from the terms of the MSA and
operate to deprive [her] of one-half of the future disbursements under the
employees’ stock ownership plan as called for by the MSA.”  

Entry of Judgment on the Mediated Settlement Agreement

          Texas public policy
encourages the peaceable resolution of disputes, particularly those involving
the parent-child relationship, and the early settlement of pending litigation
through voluntary settlement procedures. 
Tex. Civ. Prac.
& Rem. Code Ann. § 154.002 (West 2011).  The Family Code furthers this policy by
providing alternative dispute resolution procedures through which parties may settle
a suit for dissolution of a marriage.  See, e.g., Tex. Fam. Code Ann. §§ 6.601-.604 (West 2006).  One such procedure is mediation.  See id.
§ 6.602.  A mediated settlement agreement
is binding under section 6.602 of the Family Code if the agreement:

(1)  provides, in a prominently displayed statement
that is in boldfaced type or capital letters or underlined, that the agreement
is not subject to revocation;

 

(2)  is signed by each
party to the agreement; and

 

(3)  is signed by the
party’s attorney, if any, who is present at the time the agreement is signed.

 

Id. §
6.602(b).  

Settlement agreements complying
with section 6.602 are immediately enforceable, not subject to repudiation by a
party, and, with certain limited exceptions, binding on the trial court without
approval or determination of whether the agreement’s terms are just and
right.  See In re Joyner, 196 S.W.3d 883, 889 (Tex. App.—Texarkana 2006,
orig. proceeding); Cayan v. Cayan, 38
S.W.3d 161, 164-66 (Tex. App.—Houston [14th Dist.] 2000, pet.
denied); see also Spiegel v. KLRU
Endowment Fund, 228 S.W.3d 237, 242 (Tex. App.—Austin 2007, pet. denied) (noting
that when MSA meets section 6.602’s requirements, “it must be enforced in the
absence of allegations that the agreement calls for the performance of an
illegal act or that it was ‘procured by fraud, duress, coercion, or other
dishonest means.’”) (quoting Boyd v. Boyd, 67 S.W.3d 398, 403 (Tex. App.—Fort Worth 2002, no
pet.).  “After all, the purpose of
mediation is to let parties settle their property as they see fit, keeping
those matters out of the courtroom.”  Joyner, 196 S.W.3d at
889.  A trial court has no
authority to enter a judgment that varies from the terms of a mediated
settlement agreement.  Cf. Garcia-Udall v. Udall, 141 S.W.3d
323, 332 (Tex. App.—Dallas 2004, no pet.) (concluding
that trial court abused its discretion under Tex.
Fam. Code Ann. § 153.0071 (West 2002) by entering judgment not
conforming with MSA in suit affecting parent-child
relationship).   

          Neither
Jill nor Billy Joe disputes that the MSA here meets the requirements of section
6.602.  Likewise, they do not dispute
that the MSA is enforceable; there is no allegation that the agreement requires
the performance of an illegal act or was procured by fraud, duress, or
coercion.  Rather, the parties’ only dispute
is with respect to the meaning of that part of the MSA dividing Billy Joe’s “future
retirement disbursements” equally and whether future distributions from Billy
Joe’s ESOP are included within its scope. 
  

Ordinarily, if the terms of the MSA
could be given a certain or definite meaning, we would construe the agreement as
a matter of law to determine whether Jill’s or Billy Joe’s construction is
correct.  See Garcia-Udall, 141 S.W.3d at 328.  But, this case presents a unique circumstance
in that the parties agreed in the MSA to submit “(a) all drafting disputes[,]
(b) all issues regarding the interpretation of [the MSA,] and (c) all issues
regarding the intent of the parties as reflected in the [MSA]” to the mediator
and to make his decision on these matters binding.  Thus, by their agreement, Jill and Billy Joe
removed the resolution of their dispute from the province of the courts and
assigned that responsibility to the mediator. 
Absent some allegation that the MSA requires an illegal act or was
procured by fraud, duress, coercion, or other dishonesty, the trial court was obligated
to enforce their agreement.  See id. at 332;
Spiegel, 228 S.W.3d at 242.      

We reject Billy Joe’s contention
that the mediator’s “flip-flopping” somehow nullifies his decision regarding
the parties’ intended division of Billy Joe’s “future retirement
disbursements.”  Billy Joe has offered no
reason why a mediator should not have the same discretion afforded trial courts
to reconsider a ruling.  See generally Fruehauf Corp. v. Carrillo,
848 S.W.2d 83, 84 (Tex. 1993) (noting that trial court has power to set aside
interlocutory orders at any time before a final judgment is entered).  The record we have of the parties’ dispute
before the mediator is limited, consisting only of the MSA, counsels’
representations at the hearing on the entry of judgment, and the three letters
issued by the mediator.  We will not
speculate about the reasons for the mediator’s reconsideration of his initial
determination nor the arguments presented to him by the parties.  We note only that the mediator acknowledged
the parties’ continuing dispute and professed an understanding of their
“concerns and the practical effect that certain language may or may not have”
in his third letter.  We conclude that letter,
being the last of the mediator’s communications, constitutes the final
expression of his decision with respect to the division of Billy Joe’s “future
retirement benefits.”  

The mediator suggested this
division of the “future disbursements”:   

H-5    Save and except for that portion awarded to
Billy Joe Moore in item H-4, fifty percent (50.00%) of all future retirement
disbursements arising out of Billy Joe Moore’s employment with ISI Specialist,
Inc. and/or Brand Industrial, whether from retirement or participation in the
employee stock ownership.

 

…

 

W-6   Save and except for that portion awarded to
Billy Joe Moore in item H-4, fifty percent (50.00%) of all future retirement
disbursements arising out of Billy Joe Moore’s employment with ISI Specialist,
Inc. and/or Brand Industrial, whether from retirement or participation in the
employee stock ownership plan, and more particularly defined in a Qualified
Domestic Relations Order to be entered by this Court.

 

The trial court’s departure from the suggested
language is not insignificant.  By entering
a divorce decree that awards Jill only fifty percent of Billy Joe’s “future
retirement disbursements from ISI Specialist, Inc. and/or Brand Industrial
arising out of Billy Joe Moore’s employment,” the trial court deprived Jill of her
right to fifty percent of all “future retirement disbursements . . . [from
Billy Joe’s] participation in the employee stock ownership plan,” which is a
right the mediator finally determined the parties intended her to have as a
part of the MSA.  The entry of a divorce
decree like this one, which varies from the terms of the MSA, is inconsistent
with the public policy favoring the resolution of disputes outside of our
courthouses in the manner the parties see fit.     

To defend the trial court’s
judgment, Billy Joe argues that the language suggested by the mediator in his
third letter is technically incorrect because the ESOP is not a retirement plan
and is not community property.  But, we
cannot pass upon the character of Billy Joe’s ESOP because we have no record of
the plan’s terms or the history of his participation in it.  The mediator, in contrast, was the
decision-maker with whom the parties presumably discussed the character and
division of their property.  Even if the future
dividends paid under the ESOP are properly characterized as Billy Joe’s separate
property, the parties certainly may agree to divide their property in a manner
different than a court might divide it.  See Cayan, 38
S.W.3d at 166 (“[T]he prohibition against divesting a spouse of separate property
applies only to judicial, i.e., unagreed, divestitures and does not restrict the parties
from dividing separate property by agreement.”).     

Although the trial court merely sought
to give effect to the parties’ true intent in its divorce decree, as the trial
court understood that intent, the trial court erred in dividing the future
disbursements from Billy Joe’s ESOP in a manner other than that provided by the
mediator.  See Garcia-Udall, 141 S.W.3d at 332; see also Tex. Fam. Code Ann. § 6.602(c); Reza v. Reza, No. 02-07-00371-CV, 2008
WL 4445619, at *1 (Tex. App.—Fort Worth Oct. 2, 2008, no pet.)
(holding that court abused discretion by dividing
property not mentioned in the MSA).  

Accordingly, we sustain Jill’s sole
issue.

Necessity of Findings of Fact and Conclusions of Law

          Billy Joe contends that
because Jill did not request, and the trial court did not file, findings of
fact and conclusions of law explaining the trial court’s reasons for departing
from the division of property set forth in the mediator’s third letter, Jill
has waived any error.[1]  We disagree. 
In each of the family law cases cited by Billy Joe the trial court heard
evidence and made a determination based on that evidence, and, when the
appellant failed to request findings of fact and conclusions of law, the
appellate court concluded the scope of its review was limited.  See Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990) (concluding
that trial court impliedly made all findings necessary to support its order modifying
child support obligations); Smith v.
Smith, 22 S.W.3d 140, 150 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (same with respect to trial court’s division of community
property); Frommer
v. Frommer, 981 S.W.2d 811, 813 (Tex.
App.—Houston [1st Dist.] 1998, pet. dism’d) (same).  These authorities do not necessitate a
request for findings of fact and conclusions of law in this case.  The parties here agreed to the division of
their marital estate in a binding MSA pursuant to section 6.602.  See Tex. Fam. Code Ann. § 6.602.  They did not leave that matter to the trial
court’s discretion.  Consequently, they
did not present any evidence to the trial court as to the character or value of
their property, and the trial court was required to render judgment on the
MSA.  See
Cayan, 38 S.W.3d at 166-67.  Under the circumstances of this case, the
absence of any findings of fact or conclusions of law does not preclude Jill’s
complaint that she was entitled to judgment on the MSA and the trial court
failed to correctly enter that judgment. 


Conclusion

          We
reverse the trial court’s final decree of divorce with respect to the division
of the future disbursements from Billy Joe’s ESOP in items H-5 and W-6.  In accordance with the mediator’s third
ruling, we reform the judgment to include this language for items H-5 and W-6:  

H-5    Save and except for that portion awarded to
Billy Joe Moore in item H-4, fifty percent (50.00%) of all future retirement
disbursements arising out of Billy Joe Moore’s employment with ISI Specialist,
Inc. and/or Brand Industrial, whether from retirement or participation in the
employee stock ownership plan.

 

W-6   Save and except for that portion awarded to
Billy Joe Moore in item H-4, fifty percent (50.00%) of all future retirement
disbursements arising out of Billy Joe Moore’s employment with ISI Specialist,
Inc. and/or Brand Industrial, whether from retirement or participation in the
employee stock ownership plan, and more particularly defined in a Qualified
Domestic Relations Order to be entered by this Court.

 

We affirm the trial court’s final decree of divorce
in all other respects.  

 

  

                                                                      Harvey
Brown

                                                                      Justice


 

Panel
consists of Justices Jennings, Sharp, and Brown.











[1]
        Billy Joe relies on section
6.711(a) of the Family Code, which provides:

 

(a)  In a suit for dissolution of a
marriage in which the court has rendered a judgment dividing the estate of the
parties, on request by a party, the court shall state in writing its findings
of fact and conclusions of law concerning:

 

(1)  the characterization of each
party’s assets, liabilities, claims, and offsets on which disputed evidence has
been presented; and 

 

(2)  the
value or amount of the community estate’s assets, liabilities, claims, and
offsets on which disputed evidence has been presented.

 

Tex. Fam. Code Ann. § 6.711(a) (West 2006).