# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00343-CV

---

**Soo Jin H. Rademacher, Appellant**

**v.**

**Franz Louis Rademacher, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
### NO. 23-0325-FC1, THE HONORABLE BRANDY HALLFORD, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Soo Jin H. Rademacher appeals the trial court's final decree of divorce dividing her and Franz Louis Rademacher's marital estate pursuant to the terms of a mediated settlement agreement (MSA). In two issues, Soo Jin[1] challenges the trial court's enforcement of the MSA on the grounds that (1) it was procured by duress and (2) she did not sign it voluntarily. We will affirm the trial court's final decree of divorce.

### BACKGROUND

Soo Jin and Franz were married in March 2003. In February 2023, Franz filed a petition for divorce based on insupportability. Soo Jin filed a counter-petition seeking a disproportionate share of the marital estate. On January 16, 2024, the parties executed an MSA, which stated in large bold letters above the signature lines that:

---

[1] Because the parties share a surname, we refer to them by their given names for clarity.

**THIS AGREEMENT CONSTITUTES A BINDING MEDIATED SETTLEMENT AGREEMENT. IT HAS BEEN REVIEWED BY BOTH PARTIES AND THEIR ATTORNEYS. THIS AGREEMENT WILL BE FILED WITH THE COURT AND IS NOT SUBJECT TO REVOCATION.**

The MSA divided the marital estate and provided that Franz would pay the costs of mediation and prepare any documents necessary to effectuate the MSA's terms. The MSA was filed with the court on January 16, 2024.

On February 7, 2024, Soo Jin filed a motion to substitute her attorney, which the trial court granted. On February 21, Soo Jin filed a motion to set aside the MSA on the ground that she was "put under duress and coerced into signing the agreement." On February 27, the court held a hearing to prove-up the MSA during which the court considered Soo Jin's motion to set aside the MSA. Soo Jin testified at the hearing, stating that she was currently employed by the Veterans Administration; that she was undergoing treatment for cancer; that she suffered from acid reflux; and that she was being monitored by behavioral health providers for anxiety, depression, panic disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, and sleep apnea. She stated that she was also under the care of a neurologist who was "reviewing [her] memory loss;" that she had a hormone disorder and immunity disorder due to having her thyroid, uterus, and ovaries removed; and that doctors had discovered a lump in her breast and a kidney stone. Soo Jin stated that she had suffered from these disabilities for several years. Before beginning work at the Veteran's Administration, Soo Jin worked for the Department of the Army for ten years and had served as a Korean to English language translator.

Soo Jin testified that she moved to the United States in 2003 after marrying Franz and that English is her second language. During the divorce proceedings, Soo Jin was represented by four different attorneys. The first attorney accompanied Soo Jin to a mediation

2

which was terminated after two hours without agreement because, according to Soo Jin, her attorney was unprepared. Soo Jin's second attorney withdrew because Soo Jin could not continue to pay her. Soo Jin's third attorney accompanied her to the January 2024 mediation. Soo Jin testified that at the mediation she was presented with a property division spreadsheet prepared by Franz's attorney; that she could not validate the values assigned to the properties; and that she told her attorney to tell Franz's attorney that she needed more time to validate the numbers because Franz's attorney had not provided any "validating information from subject matter experts such as comparing analyses or appraisal." Soo Jin testified that she told her attorney and the mediator two or three times that she needed more time to check the property values but was told that "today is the day to decide."

Regarding her claim to have signed the MSA under duress, Soo Jin stated that her lawyer and the mediator were "bully[ing] her with their legal license" and that they told her that they were licensed attorneys and she was not. Soo Jin testified that she felt "kind of a fear and worry" and that she "started getting nervous" about being asked to make an important decision that day. Soo Jin stated that she "didn't see any other choice" but to sign the MSA that day. Soo Jin said that she asked the attorney and the mediator whether there was "any option" and was told that there was not. Soo Jin testified that she felt as though she was "coerced or threatened on the day of the mediation to finish [the] divorce." Soo Jin attributed her mental state that day to her disabilities and testified that she "started panicking" and "took [her] panic disorder medicine, gabapentin, because [she] was sweating and shaking."

Soo Jin agreed that she had participated in a previous mediation in 2022 that did not end in an agreement and that she was aware that a mediation could end without an agreement, but she denied that she knew there was a possibility to leave the mediation without an

3

agreement this time because the reason the mediation ended previously was that her attorney was unprepared and "we didn't start anything." Soo Jin also testified that she was told by the mediator that she would not be entitled to certain property because it was considered to be separate, rather than community, property. Soo Jin stated that she felt that her attorney and the mediator were "bullying" her because every time she asked about dividing certain items, "they were using their legal license" and telling her "this is not going to happen," which caused her to feel like she did not know anything and that she had to "listen to them or follow what they dictate[d]" to her. Soo Jin also testified that her attorney advised her that a judge would "not ever give me any more dollar[s] than what [the] mediator listed in the Excel spreadsheet."

At the conclusion of the hearing, the court informed the parties that it was denying the motion to set aside the MSA. The court concluded that Soo Jin's testimony did not establish any impairment that warranted setting aside the MSA or that the MSA was procured due to fraud, duress, or coercion. The court found that the MSA was signed by the parties and their attorneys, that it was clearly labeled as a mediated settlement agreement, and that it contained a statement in boldface capital letters that it was not subject to revocation and was a binding agreement. The court accepted the MSA and rendered judgment in accordance with its terms. Soo Jin then perfected this appeal.

**DISCUSSION**

Whether a mediated settlement agreement complies with the requirements of the Texas Family Code is a question of law that we review de novo. *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 241 (Tex. App.—Austin 2007, pet. denied). We review a trial court's decision not to set aside a mediated settlement agreement for abuse of discretion. *R.H. v. Smith*,

4

339 S.W.3d 756, 765 (Tex. App.—Dallas 2009, no pet.). A trial court does not abuse its discretion if there is some substantive, probative evidence to support its conclusion. *Crowson v. Crowson*, No. 03-11-00795-CV, 2013 WL 6665022, at *4 (Tex. App.—Austin Dec. 13, 2013, pet. denied) (mem. op.).

In a divorce action, the parties can enter into a mediated settlement agreement. *See* Tex. Fam. Code § 6.602. Section 6.602 provides that a mediated settlement agreement is binding on the parties if the agreement provides in prominently displayed boldface type that the agreement is not subject to revocation and is signed by each party and each party's attorney who is present. *See id.* § 6.602(b). The mediated settlement agreement is immediately binding, does not require approval of the court, and is not subject to repudiation. *See id.*; *Spiegel*, 228 S.W.3d at 241; *In re Joyner*, 196 S.W.3d 883, 889 (Tex. App.—Texarkana 2006, pet. denied). Section 6.602 also provides that if a mediated settlement agreement meets the statutory requirements "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or any other rule of law." Tex. Fam. Code § 6.602(c). Thus, the statute requires the trial court to render judgment on a section 6.602 mediated settlement agreement even if one party attempts to withdraw consent. *In re Joyner*, 196 S.W.3d at 890; *see Mullins v. Mullins*, 202 S.W.3d 869, 876 (Tex. App.—Dallas 2006, pet. denied) (unilateral withdrawal of consent does not negate enforceability of mediated settlement agreement in divorce proceedings). However, a trial court is not required to enforce a mediated settlement agreement if it is illegal in nature or was procured by fraud, duress, coercion, or other dishonest means. *Spiegel*, 228 S.W.3d at 241; *Joyner*, 196 S.W.3d at 889; *Boyd v. Boyd*, 67 S.W.3d 398, 403 (Tex. App.—Fort Worth 2002, no pet.).

The undisputed facts establish that the MSA in this case met the statutory requirements of section 6.602(b). However, in her first appellate issue, Soo Jin argues that, notwithstanding the MSA's compliance with section 6.602(b), the trial court abused its discretion in enforcing the MSA because it was procured by duress. Soo Jin contends that she signed the MSA under duress because (1) she was told by her attorney that if she failed to sign the MSA on the day of mediation she would have to go to trial, which would cost her $30,000 and not yield a better result; (2) her attorney and the mediator told her she would not get "another dollar" going to trial; (3) her attorney and the mediator made statements that "made her feel that she had no other choice but to sign the agreement the day of mediation."

Duress occurs when some kind of threat renders a person incapable of exercising free agency and unable to withhold consent. *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 878 (Tex. 2005); *Arnett v. Arnett*, No. 03-05-00056-CV, 2008 WL 1912058 (Tex. App.—Austin May 2, 2008, pet. denied) (mem. op.). The evidence Soo Jin relies on to support her claim of duress is that she believed that if she did not sign the MSA that day she would be forced to go to trial, which would cost $30,000 and not yield a better result. She further points to statements made by her attorney that she would not get "another dollar" if she did go to trial. Soo Jin also testified, however, that she had attended a previous mediation that did not end in a settlement, from which the trial court could reasonably infer that Soo Jin understood that she had the option to decline to sign the MSA that day. Statements to Soo Jin by her attorney and the mediator that she would not get a better result at trial constitute legal advice rather than threats that would render her incapable of exercising free agency. *See Zimmerman v. Zimmerman*, No. 04-14-00347-CV, 2005 WL 1812613, at *10 (Tex. App.—San Antonio Aug. 3, 2005, pet. denied) (mem. op.) (trial court did not err in finding that mediator's statement

6

imparting his impression of what could possibly happen at jury trial did not coerce husband to sign agreement).

Soo Jin also argues on appeal that there was no testimony to contradict her description of her various mental health diagnoses, her panic attack during mediation, or that she took anti-anxiety medication during the mediation.[2] But the trial court also heard testimony that Soo Jin had suffered from these diagnoses for years and had been able to work for both the Department of the Army and the Veterans Administration. And, aside from stating that she had a panic attack during the mediation and took some medication, Soo Jin does not explain how those physical or mental conditions caused her to be incapable of exercising free agency and unable to withhold consent. *See Crowson*, 2013 WL 6665022, at *6 (holding trial court did not abuse its discretion by denying motion to set aside MSA despite wife's testimony that she was feeling symptoms of post-traumatic stress disorder and was not focused during mediation and did not remember understanding what she signed). We conclude that the trial court did not abuse its discretion in declining to set aside the MSA on the ground that it was procured by duress. We overrule Soo Jin's first issue.

In her second issue, Soo Jin argues that the trial court abused its discretion by not setting aside the MSA because there was evidence that she did not sign it voluntarily.[3] The MSA itself states that it was signed "voluntarily." Nevertheless, Soo Jin asserts that she established

---

[2] Soo Jin does not assert, nor did she offer any evidence that, the medication impaired her ability to make decisions during the mediation.

[3] Franz maintains that Soo Jin did not preserve this issue because she did not assert that she did not voluntarily sign the MSA in her motion to set it aside. However, because the basis of her claim that her signature was not voluntary is her assertion that she signed the MSA under duress, we conclude that she has preserved this corollary argument and will address it. *See* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated a covering every subsidiary question that is fairly included.").

that her signature was not voluntary because she was persuaded to sign it while under duress. Soo Jin again points to evidence that she experienced a panic attack during the mediation, which prompted her to take medication, and that she had asked the mediator for more time to consider the terms of the MSA. Soo Jin maintains that the trial court's failure to set aside the MSA in the face of this evidence was arbitrary and unreasonable. We disagree. As explained above, the evidence Soo Jin presented at the hearing on the motion to set aside the MSA was principally that she felt that her attorney and the mediator "bullied" her by telling her that she should sign the MSA because she would not have a better outcome at trial. This legal advice, albeit unwelcome to the client, does not establish that Soo Jin's signing the MSA was involuntary, coerced, or procured by duress. The trial court heard evidence that Soo Jin had attended a previous mediation, which was substantive, probative evidence to support the trial court's determination that Soo Jin knew that she had a choice about whether to sign the MSA. And Soo Jin failed to explain how her mental health diagnoses, which she had managed for years in a professional setting, or the medication she took during the mediation, rendered her decision to sign the MSA involuntary. We conclude that the trial court did not abuse its discretion in declining to set aside the MSA on the ground that Soo Jin did not sign it voluntarily. We overrule Soo Jin's second issue.

## CONCLUSION

Having overruled Soo Jin's two appellate issues, we affirm the trial court's final decree of divorce.

_____

Chari L. Kelly, Justice

8

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   April 16, 2026