Bessie **JERNIGAN**, Appellant,

v.

Peggy Neal **SCOTT** et al., Appellees.

No. 15297.

Court of Civil Appeals of Texas, San Antonio.

Nov. 27, 1974.

Rehearing Denied Jan. 29, 1975.

Will A. Morriss, Jr., San Antonio, Edwin H. White, Rocksprings, for appellant.

C. H. Gilmer, Rocksprings, Kendall, Randle, Finch & Osborn, Austin, for appellees.

CADENA, Justice.

Plaintiff, Bessie Jernigan, claiming to be the surviving wife of Neal Jernigan, Sr., who died on July 12, 1967, seeks to establish a one-half community interest in property owned by Neal at the time of his death. Defendants are the devisees under Neal's will. Defendant, Vivian Jernigan, who lived with Neal as man and wife for more than thirty years preceding his death, is also sued in her capacity as independent executrix of Neal's estate. Neal's children, by both Bessie and Vivian, are the other defendants. Bessie appeals from a summary judgment rendered in favor of defendants.

It is undisputed that on April 4, 1931, Bessie and Neal entered into a separation agreement. In performance of such agreement, Bessie and Neal executed instruments conveying the community property described in the agreement to a trustee, who thereafter conveyed to Bessie and Neal, respectively, the properties set aside to each under the terms of the agreement. In addition, in compliance with the provisions of the agreement, Neal executed and

delivered to Bessie eleven promissory notes, totalling $10,579.50 and bearing interest at the rate of 8% per annum, and he agreed to pay all existing community debts with the exception of an indebtedness of approximately $5,400.00 owing on the property received by Bessie under the terms of the agreement.

Bessie contends that the 1931 agreement does not purport to affect the rights of the parties in property acquired by either after the execution of the agreement and that, in any event, the agreement is unenforceable and therefore cannot bar her claim because (1) at the time the agreement was executed the parties were not, in fact, separated, nor were they in the process of, or contemplating, separating; (2) the agreement was not a fair and equitable division of the community estate of the parties; (3) Bessie executed such agreement as the result of fraud perpetrated upon her by Neal; and (4) she executed such agreement as the result of duress, threats, compulsion, coercion, overreaching and undue influence on the part of Neal.

In her answer Vivian, in addition to traversing the allegations in Bessie's petition, insisted that, because Bessie had accepted the benefits of the separation agreement and had delayed unreasonably in asserting her rights to disavow the contract, it did not lie within her mouth to question or disavow the efficacy of the agreement.[1]

It is clear from the summary judgment record that the judgment against plaintiff cannot rest on the validity of the 1931 agreement. The summary judgment "evidence," at the very least raises issues of material fact relating to the validity of the agreement. There is a genuine issue of fact as to whether or not Bessie and Neal were separated, or contemplating separation, at the time the agreement was executed. Bessie's deposition and the affidavits she filed in opposition to the motion for summary judgment are sufficient to raise

issues of fact relating to her claims of unfairness, duress, coercion and fraud. The record does not establish, as a matter of law, that Bessie and Neal were divorced prior to Neal's death.

It is clear from the trial court's judgment that the summary judgment against Bessie rests solely on the trial court's conclusion that, under the facts and circumstances of this case, Bessie is precluded from claiming the invalidity and unenforceability of the 1931 separation agreement. As we interpret Vivian's brief, she concedes that the summary judgment rests solely on the theory that Bessie is barred from questioning the validity of such agreement. Further, since the judgment declares that Bessie has no interest whatever in the property in question, it is clear that it cannot rest on the theory that Vivian was the putative wife of Neal and, therefore, we find it unnecessary to discuss the putative doctrine and its possible application to the facts of this case.

Bessie's first eight points assert that the trial court erred in overruling her exceptions to some of the affidavits filed by Vivian in support of her motion for summary judgment. In view of the theory on which the judgment below rests, and on which our affirmance of such judgment is based, we conclude that the error of the trial court in failing to strike such affidavits, if error there was, constitutes harmless error. That is, the judgment finds support in undisputed facts which are established as a matter of law without reference to the statements contained in the challenged affidavits. Bessie's first eight points of error, even if they should be sustained, would not require a reversal of the trial court's judgment and they are, therefore, overruled.

Similarly, all of Bessie's points asserting the existence of fact issues relating to the validity of the separation agreement are irrelevant and are overruled. For the pur-

1. The answers of the other defendants to Bessies petition are not included in the transcript filed in this court.

poses of this opinion, we have assumed that Bessie and Neal were not separated, or contemplating separation, at the time the agreement was executed; that Bessie and Neal were never divorced and that their marriage was dissolved only by the death of Neal; that, had she taken timely action, Bessie would have had the right to rescind the agreement because it was not fair and because of the alleged fraud, coercion, duress and overreaching on the part of Neal; and that Vivian failed to establish, as a matter of law, that she was the putative wife of Neal. We make these assumptions because, as we view the record, there exist genuine questions of fact concerning each of the issues listed in the preceding sentence.

The judgment below is based on the following undisputed facts:

(1). According to Bessie's admission in her pleadings, she and Neal were finally separated in 1935.

(2). Bessie made no effort to challenge the validity of the separation agreement, or to have it set aside, until after the death of Neal in 1967. This was 36 years after the execution of the agreement and 32 years after Neal and Bessie were separated.

(3). Bessie received and exercised dominion over the properties which were conveyed to her under the provisions of the agreement.

(4). In performance of his obligation under the agreement, Neal executed the eleven promissory notes, payable to Bessie, in the total amount of $10,579.50. These notes were delivered to, and accepted by Bessie, and were secured by a lien on the property which Neal received under the provisions of the separation agreement. Payments called for by these notes were made by Neal and accepted by Bessie, and in 1947, following payment of the notes in full, Bessie executed a release of the lien, securing payment of the notes, on the property received by Neal under the provisions of the agreement.

(5). Following her separation from Neal, Bessie engaged in the following transactions involving the property she received under the separation agreement:

(a). On February 21, 1940, Bessie conveyed some 62 acres of the land she received under the separation agreement to Quincy Craig, in exchange for certain lands conveyed to her by Craig. The deed executed by Bessie described her as a feme sole, and Neal did not join in the conveyance.

(b). On December 19, 1947, by deed in which she is described as a "widow," Bessie conveyed some 50 acres to the State of Texas. This land conveyed included the land she received under the separation agreement and the land which she described as having been conveyed to "Bessie Jernigan" by Quincy Craig. This conveyance was made under threat of condemnation, but Neal did not join in the conveyance.

(c). On May 17, 1949, Bessie executed an oil and gas lease covering all of the land she received under the separation agreement, excluding the portions previously conveyed by her. The instrument signed by Bessie describes her as a "feme sole."

(d). On July 29, 1959, after the expiration of the 1949 lease, Bessie executed an oil and gas lease to Atlantic Refining Company covering all the land, except that which she had previously conveyed, received by her under the separation agreement. The lease instrument describes Bessie as a "feme sole" and was not executed by Neal.

(e). On November 28, 1967, after the death of Neal, and after the expiration of the 1959 oil and gas lease, Bessie executed and delivered to Marvin W. Hinton an oil and gas lease covering the land received by her under the separation agreement. This instrument contains the recital that Bessie was "the sole owner of the herein described parcels of land before she became the widow of Neal Jernigan, deceased,"

and recites that the land described in the instrument "include all of the land conveyed to Bessie Jernigan" by the trustee in performance of the separation agreement "by deed dated April 14, 1934."

(f). All of the instruments described in the preceding five paragraphs contain provisions binding Bessie to warrant and defend the title conveyed, and each instrument is acknowledged by Bessie as a feme sole. That is, the acknowledgments are not in the form prescribed for a conveyance by a married woman under the law in force at the time of such conveyances.

The judgment recites that, as a consequence of her conduct, Bessie "elected to claim the properties set aside to her" by the agreement "and received and retained benefits vested in and possessed by her only under and by virtue of said agreement and conveyances pursuant thereto, and exercised rights possessed by her only under said agreement, and that she thereby repeatedly ratified and affirmed the said contract, and waived any right which she might have to rescind . . . same." The trial court also concluded that Bessie is barred from asserting her claim for recission because she waited more than 32 years after her separation from Neal, "and after death had sealed the lips of" Neal before claiming that the contract was "the product of coercion or was otherwise defective or unenforceable."

The record establishes as a matter of law that for over 30 years Bessie treated the contract as valid and claimed and exercised the rights which had their source solely in the separation agreement. Not only do we have conduct on her part which is consistent only with her acceptance of the agreement, but we have a complete absence of any indication by her of dissatisfaction with the agreement or of a claim that the contract is, as she now claims, unenforceable and completely lacking in efficacy. The effect of this long silence is rendered ineluctable by the fact that during this entire period all of the facts which she now asserts rendered the contract inoperative were known to her. If, in fact, she and Neal were not separated at the time the contract was made, this was known to her at the time she signed the instrument. If, in fact, at that time they were not contemplating separation, this fact was then known to her. If she signed the agreement only under the influence of duress and coercion, she necessarily knew of the existence of such duress and coercion at the time she executed the agreement, unless we are prepared to believe that she was coerced by facts of whose existence she was unaware.

■ We need not here decide whether the lapse of more than 30 years during which Bessie remained silent, unaccompanied by even a hint of an explanation or excuse for the delay, is, of itself, sufficient to justify the application of the doctrine of laches to bar her claim.[2] We have here not only an unreasonable delay but also a clear showing of prejudice. Because of her unexplained delay, Bessie has gained a distinct advantage and has imposed a distinct disadvantage on those who would attempt to dispute her claim. Neal Jernigan, Sr., the only other participant in the transaction in question and the only person who could, from personal knowledge, dispute Bessie's charges, is dead, and the suit was not filed until after his death. In Railroad Commission v. Beacon Oil & Refining Co., 227 S.W.2d 293, 297 (Tex.Civ.App.—Austin 1950, writ ref'd n.r.e.), the court pointed out that the prejudicial situation in which complainant has placed the defend-

---

2. "There is no hard and fast rule either as to the lapse of time or the circumstances which will justify the application of the doctrine of laches. In addition to mere lapse of time, there must exist some circumstances from which the defendant may be prejudiced, or there must be such a lapse of time that it may be reasonably supposed that such prejudice will occur . . . ." Williams v. Nevelow, 501 S.W.2d 942, 948 (Tex.Civ.App. —San Antonio 1973) affirmed, 513 S.W.2d 535 (Tex.1974).

ant may be occasioned by defendant's inability, because of complainant's delay, to produce evidence in defense because matters of proof have been lost, witnesses have died and the transaction has been obscured by lapse of time. The court there added that relief may be denied where it appears that one who participated in the transaction or has suffered impairment of memory or mental faculties. See also 27 Am.Jur.2d, Equity § 170 (1966); 30A C.J. S. Equity § 119 (1965).

It becomes necessary whether the 1931 agreement, the validity of which Bessie is precluded from questioning, purports by its terms to affect the rights of each party in property thereafter acquired by the other.

■ The agreement first lists the properties which the parties owned as community property on the date of the agreement. This inventory is followed by the provisions describing the portions of the community estate which is to be received by each party, including a provision for the conveyance of the described properties to a trustee who would, in turn, convey to each party his or her respective share, and including the provisions relating to the payment of the community debts, with a described exception, by Neal and the execution of the promissory notes payable to Bessie.

The agreement then contains the following language:

"The said shares by each party thus received shall thereafter be held and considered the sole and separate property of each respective party and the said parties, . . . hereby expressly released [sic] and relinquish, each to the other, every claim, demand, right and interest that *he or she may have in or against the other, or in or against his or her estate as the same is hereby determined and as the same may hereafter be,* together with any income or earnings thereof, arising from and during their said marriage and of or from any other reason growing out of the said marital relationship thereby created, . . .." (Emphasis added.)

This provision clearly contemplates a relinquishment of claims by each party against the separate estate of the other. This relinquishment of claims and rights extends to the separate estate of each as such separate estate is "hereby determined" or as such separate estate "may hereafter be." Bessie contends that the qualifying phrase, "as hereby determined" limits the application of the release or disclaimer to the property which each received pursuant to the agreement, since the separate estate of each as "determined" by the agreement consists of, and is limited to, the property described in the instrument. This argument cannot be discarded as unpersuasive, but it overlooks the fact that the agreement also deals with the separate estate of each party as such separate estate "may hereafter be." The second qualification or description of the estate as to which rights are forsworn is couched in language of futurity. Bessie, in pressing her interpretation of the contract upon us, does not overlook the second qualification. However, she urges that the reference to the separate estate "as the same may hereafter be" embraces only changes in the character of the property received by each under the agreement, such as changes resulting from the making of improvements by each party on the property received by him or her under the agreement.

We disagree. Lawyers do, of course, often seek to attain clarity and specificity by expressing the same thought or attempting to convey the same meaning in different ways. But when there is resort to redundancy in an effort to eliminate vagueness or ambiguity, the additional words and phrases utilized are words and phrases of similar import, such as the stereotyped "grant, sell and convey." When language of clearly different meaning is used, it is

utilized for the purpose of conveying a message differing from that communicated by the preceding language. A description of an estate as it now exists is quite different from a description of the estate as it may be in the future.

■ It must be noted that the release extends to the "income or earnings" generated by the separate estate. The reference to income from the property must be interpreted as a reference to future income which, in the absence of a provision concerning such income, would be community property. Vernon's Tex.Fam.Code Ann. § 5.01 (1973); Moss v. Gibbs, 370 S.W.2d 452 (Tex.1963).

■ The most reasonable intention which can be ascribed to parties contemplating separation and desirous of adjusting questions relating to property rights is an intention to make an arrangement relating to the future as well as the present and past, rather than an intention limited to existing conditions with the expectation that, in the future, the parties would periodically come together for the purpose of agreement relating to property thereafter acquired. In interpreting such an agreement, this intention should be given effect, unless the language used indicates the contrary. Where, as here, the language of the agreement not only fails to point to a contrary intent but, instead, is consistent with an intent to finally dispose of all matters of controversy, present and future, between the parties, it would be unreasonable to adopt a construction which frustrates such intention.

■ Vivian's motion for summary judgment merely sought a judgment to the effect that Bessie take nothing by her suit and a declaration to the effect that Bessie has no interest in the properties owned by Neal at the time of his death. The summary judgment rendered by the trial court in this case goes beyond this and awards Vivian, as against Bessie, title to and possession of such property, both in her individual capacity and in her capacity as independent executrix of the estate of Neal.

The record reflects that Vivian filed a cross-action against Bessie and her co-defendants asserting that, as the putative wife of Neal, she owns an undivided one-half interest in all property owned by Neal at the time of his death. She filed no motion for summary judgment in relation to her cross-action. The judgment contains language to the effect that, with the exception of the issues disposed of by the judgment, all other issues and matters of dispute between the parties, including but not limited to Vivian's cross-action, are severed, pursuant to Vivian's motion for severance, and docketed separately. It is clear that it was not the intention of the trial court to settle any matters in dispute between Vivian and the other defendants, but to reserve such matters for future disposition.

In view of these circumstances, and bearing in mind the limited relief sought by Vivian in her motion for summary judgment, the judgment of the trial court is reformed by deleting the portions of the judgment which purport to vest title and the right to possession in Vivian. The deletion of such language from the judgment obviates the necessity for a remand of the cause for trial of such issues since the judgment, as reformed, clearly effects a severance of all issues, other than Bessie's interest in the property, for future determination. As so reformed, the judgment of the trial court is affirmed.