**George D. McDONALD, Administrator of the Estate of Joe Bob McDonald, Deceased, Appellant,**

v.

**Margaret McDONALD and Connecticut General Life Insurance Company, Appellees.**

**No. 20901.**

Court of Appeals of Texas, Dallas.

March 1, 1982.

Rehearing Denied April 14, 1982.

William F. Billings, Dallas, for appellant.

Cole B. Parker, Dallas, for Margaret McDonald.

Thomas G. Nash, Jr., Dallas, for Connecticut General Life Ins. Co.

Before ROBERTSON, STEPHENS and VANCE, JJ.

STEPHENS, Justice.

This dispute as to the ownership of the proceeds of two life insurance policies arises between the named beneficiary, the former wife of the decedent, and the administrator of the estate of decedent. A divorce had occurred between the named beneficiary and the decedent twenty-five days before the decedent's accidental death. The wife's designation as beneficiary of the policies had not been changed by the decedent prior to his death, although the divorce decree awarded all insurance on decedent's life to him as his sole and separate property. The question presented is whether the divorce decree divested the wife of her contingent right to the insurance proceeds on maturity of the policies by the death of the insured. The trial court concluded that the wife, as named beneficiary, was entitled to the proceeds. We disagree, and accordingly reverse.

The facts are not in dispute. Joe Bob McDonald and Margaret McDonald's marriage was terminated by divorce March 13, 1979. In the adjudication of their community property rights, the husband was awarded, as his sole and separate property, specific items, including, "any and all insurance, pensions, retirement benefits, and other benefits arising out of Respondent's [decedent's] employment." On April 7, 1979, just twenty-five days after the divorce, decedent was killed in an automobile accident. At the time of his death he had not changed

the named beneficiary of the policies. Within a short period of time after his death, Margaret made application to Connecticut General Life Insurance Company, the carrier, for payment of the policy proceeds to her as the named beneficiary. The carrier paid her the sum due under the ordinary life policy and deferred payment under the accident policy while the circumstances of decedent's death were being investigated. Prior to payment of the accident policy, the carrier tendered the proceeds of the accident policy into court and disclaimed liability for its prior payment of the ordinary life claim to Margaret, contending lack of notice of any adverse claim.

We first address the question of which party is entitled to the insurance proceeds. Although prior to 1957, there existed some doubt as to the status of life insurance as property, the legislature in 1957 amended Tex.Rev.Civ.Stat.Ann. art. 23(1) by enlarging the statutory definition of "property" to include "insurance policies and the effects thereof." Subsequently, in *Brown v. Lee*, 371 S.W.2d 694 (Tex.1963), the supreme court recognized the 1957 amendment, and stated that by such change the legislature had aligned Texas with other community property states in adhering to the theory that the right to receive insurance proceeds payable at a future but uncertain date is "property" in the nature of a chose in action which matures at the death of the insured. The court further held that when purchased with community funds, the ownership of the unmatured chose logically belongs to the community, unless it has been irrevocably given away under the terms of the policy, i.e., where the insured has, without fraud, foreclosed any right to change the named beneficiary. Further, the proceeds at maturity are likewise community in character, except where the named beneficiary is in fact surviving, in which case a gift of the policy rights to such beneficiary is presumed to have been intended and completed by the death of the insured.

As no irrevocable designation of beneficiary was made in this case, the chose in action as to the unmatured rights to the insurance policy proceeds belonged to the community on the date of divorce. Furthermore, under the facts of this case, it can hardly be said that the decedent intended to give the insurance proceeds to his wife. A hotly contested divorce had been in progress between the parties from April 1978, when the decedent filed suit for divorce, until its termination, after a jury trial on March 13, 1979, only twenty-five days before decedent's death. The record in this case contains portions of the testimony of the decedent in the divorce action reflecting a high degree of animosity between the parties, allegations of drug abuse, and charges of adultery leveled against Margaret by the decedent, as well as charges that she abandoned their children, and committed acts of violence against the decedent. There was further evidence that he wanted his children to have all the money he had left after the divorce. As a result of the jury verdict in the divorce trial, the decedent was named managing conservator of the children. We conclude that the evidence sufficiently rebutted the usual presumption of gift arising in favor of the named beneficiary by the decedent's failure to change the named beneficiary of the policies prior to his death.

Having determined that the two insurance policies were community property of the decedent and Margaret on March 13, 1979, when the marriage was terminated, we note that Texas Family Code, § 3.63, in force when the divorce was granted, requires the court to order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage. The decree of divorce recited that the court did just this and awarded the decedent, as his sole and separate estate, any and all insurance arising from his employment. The two policies in question were policies available to him by reason of his employment. Thus, we conclude that the effect of the divorce judgment was to divest Margaret of her then existing rights in the future proceeds of the

two policies in question. In the case of *Pitts v. Ashcraft*, 586 S.W.2d 685 (Tex.Civ. App.—Corpus Christi 1979, writ ref'd n. r. e.), the court enunciated the general rule in Texas in accordance with the language expressed in Couch on Insurance, sec. 27.114, p. 655 (1960):

"While the failure of the husband to exercise his power to change the beneficiary ordinarily indicates that he does not wish to effect such a change, each case must be decided upon its own facts."

We are further persuaded in our holding by the decision in *Romero v. Melendez*, 83 N.M. 776, 498 P.2d 305 (1972). In that community property state, the supreme court was confronted with a fact situation almost identical to this one, and held that the weight of authority supports the proposition that when a divorce decree makes a definite disposition of the insurance policies, the wife's interest as a beneficiary can be defeated. *See Brewer v. Brewer*, 239 Ark. 614, 390 S.W.2d 630 (1965); *Dudley v. Franklin Life Insurance Co.*, 250 Or. 51, 440 P.2d 363 (1968). We conclude that, under the facts of this case, Margaret's right to the proceeds of the two policies was terminated by the divorce decree of March 13, 1979. Appellant's first point of error is sustained.

Next we address the liability of the carrier, Connecticut General Life Insurance Company. The administrator contends that the carrier is liable to the estate for the sum paid to Margaret after it received notice of the disputed claim for benefits. The carrier denies that it had notice of the dispute before its payment to Margaret.

The record reflects that on April 10, 1979, the attorney for the estate forwarded a letter to Texas Instruments, the place of decedent's employment, and the group afforded coverage by the carrier, notifying its personnel department of the divorce, enclosing a copy of the judgment, and stating that it would likely be his position that despite the decedent's failure to change the beneficiary of the policies, the proceeds should go to the estate. This letter was forwarded by Texas Instruments to the carrier, and received by the carrier some seven days prior to payment of the group life policy benefits to Margaret. The carrier does not deny receipt of the letter, but contends that, in accordance with its general office procedure, unspecified mail was first routed to its medical claims section, because of the large volume of medical claims, as opposed to death claims, and that because of such routing, the notice did not come to the attention of the proper person in the death claims division until after the benefits had been paid to Margaret. Thus, Connecticut General argues that notice to the medical claims department does not constitute notice to the death claims department, and that consequently it is protected in its payment to Margaret by the provisions of article 3.48 of the Texas Insurance Code which provides:

". . . the company issuing such policy shall, in the absence of the receipt by it of notice of an adverse claim to the proceeds of the policy from one having a bona fide legal claim to such proceeds or a part thereof, pay such proceeds becoming due on the death of the insured to the person so designated as beneficiary, and such payment so made, in the absence of such notice received by the insurance company prior to the date of the payment of the proceeds, shall discharge the company from all liability under the policy."

The carrier argues that knowledge acquired by its personnel in its medical claim division would not be imputed to its personnel in its death claims division, under the general rule that for notice or knowledge to be imputed to the principal, it must be shown that the authority of such employee extended to the matter about which and concerning which such knowledge or notice was obtained. We reject this contention. Admittedly, as argued by the carrier, modern business technology as applied to corporate office procedures and the necessity for departmentalization has brought about more specialized job functions and delegation of authority in the chain of command, and employee responsibilities are perhaps more narrowly defined than ever

before. However, the decisions as to methods of operations and delegation of authority are peculiarly within the province of the corporation. Management is free to organize and conduct its affairs as it may see fit, but in doing so, it may not narrow and limit its liabilities and responsibilities to third parties with whom it deals. In this case Connecticut General Life received notice at its place of business in a usual and customary manner, i.e., through the United States mail. The method in which this notice was handled after its receipt is not the responsibility of the claimant. We conclude that notice was received by the carrier that an adverse claim was being asserted to the policy proceeds by one other than the named beneficiary, before payment was made to the named beneficiary, and thus payment made to the named beneficiary was at the risk of the carrier, whether payment was made through some mistake in office procedure or in deliberate defiance to the claim.

The carrier further contends that the notice received was not sufficient notice of an adverse claim in that the letter only indicated a likelihood that the administrator of the estate would claim that the proceeds should go to the estate instead of the named beneficiary. This seems somewhat inconsistent with the action taken by the carrier in interpleading the proceeds of the accidental death policy into court, soon after this letter came to the attention of its death claims department. We hold that the notice was sufficient to constitute notice of claim adverse to that of the named beneficiary.

Reversed and remanded with instruction to enter judgment for appellant in his capacity as administrator of the estate of Joe Bob McDonald, deceased, against Connecticut General Life Insurance Company and Margaret McDonald, jointly and severally for the sum of $28,088.66, together with interest thereon at the legal rate from April 30, 1979, such sum representing the net proceeds due from the basic group life insurance policy on the life of the decedent, as of the date of its payment to Margaret, together with judgment that appellant recover from the registry of the court the sum of $145,000.00, together with any investment interest accrued thereon, such sum representing the proceeds due from the accidental death policy. Connecticut General Life shall have judgment against Margaret McDonald for $28,088.66, such sum being the sum previously paid to Margaret in error, together with interest thereon at the legal rate from the date of such payment, together with the sum of $650.00, such sum representing the attorney's fee awarded Connecticut General Life by the trial court. Costs of court are taxed against Connecticut General Life and Margaret McDonald.