AFFIRMED; Opinion Filed July 28, 2014.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00656-CV

**WENDY JEANELLE HENNIG, Appellant**
**V.**
**MICHAEL "MIRO" DIDYK, INDIVIDUALLY AND AS INDEPENDENT**
**ADMINISTRATOR OF THE ESTATE OF MATTHEW MICHAEL DIDYK,**
**DECEASED, Appellee**

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-51025-07**

## OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Myers

Appellant Wendy Jeanelle Hennig appeals from a judgment entered in favor of appellee

Michael "Miro" Didyk, individually and as independent administrator of the estate of Matthew

Michael Didyk, deceased, appellant's former husband, following a nonjury trial. In three issues,

appellant argues the trial court erred by (1) failing to give effect to the decedent's designation of

appellant as the beneficiary of contested life insurance proceeds; (2) failing to give res judicata

effect to a decision from a federal district court; and (3) finding and concluding appellee was

entitled to the life insurance proceeds. We affirm.

### BACKGROUND AND PROCEDURAL HISTORY

Appellee Michael "Miro" Didyk is the independent administrator of the estate of his son,

Matthew Michael Didyk, deceased, and appellant Wendy Jeanelle Hennig is the decedent's

former wife.  At the time of his death in September 2010, the decedent was insured by a life insurance policy issued as part of an employee benefit plan.  It is undisputed that the decedent was insured by the life insurance policy as a result of his employment, and that the life insurance policy was part of the decedent's employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974 (ERISA).

In April 2005, the decedent had designated his then-wife, appellant, as the beneficiary of the policy.  On May 15, 2007, decedent and appellant were divorced by an agreed final decree of divorce, in cause number 401–51025–07, styled *In the Matter of the Marriage of Matthew Michael Didyk and Wendy Jeanelle Didyk*, in the 401st Judicial District Court of Collin County, Texas.  The divorce decree provided in part:

> ### *Division of Marital Estate*
>
> **A.  Property to MATTHEW MICHAEL DIDYK**
>
> IT IS ORDERED AND DECREED that **MATTHEW MICHAEL DIDYK** is awarded as his sole and separate property all right, title, and interest, and claim in and to the property listed in **Schedule "A"**, attached to this *Decree* and incorporated herein as if fully set out, and **WENDY JEANELLE DIDYK** is divested of all right, title, and interest, and claim in and to that property.
>
> **B.  Property to WENDY JEANELLE DIDYK**
>
> IT IS ORDERED AND DECREED that **WENDY JEANELLE DIDYK** is awarded as her sole and separate property all right, title, interest, and claim in and to the property listed in **Schedule "B"**, attached to this Decree and incorporated herein as if fully set out, and **MATTHEW MICHAEL DIDYK** is divested of all right, title, interest, and claim in and to that property.

Schedule "A" of the decree, entitled "Property Awarded to Matthew Michael Didyk," awarded the decedent, in part:

> 5.  All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the husband's past, present, or future employment.

–2–

. . . .

9.  All policies of life insurance (including cash values) insuring the husband's life.

Schedule "B," entitled "Property Awarded to Wendy Jeanelle Didyk," similarly provided, in part:

7.  All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 40l(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the wife's past, present, or future employment.

. . . .

11.  All policies of life insurance (including cash values) insuring the wife's life.

The decedent died on September 25, 2010. The beneficiary designation in the life insurance policy, however, was never changed by the decedent, and appellant remained the designated beneficiary in the policy at the time of the decedent's death.

In December 2010, a probate court in Collin County appointed appellee "Miro" Didyk, the decedent's father, to serve as the independent administrator of the decedent's estate. The probate court subsequently signed a "Judgment Declaring Heirship" that found the lawful heirs of the decedent's estate were his parents—"Miro" Didyk and Virginia Didyk, his wife—in equal shares. Both appellee, as the independent administrator of the decedent's estate, and appellant, as the then-designated beneficiary, made claim to the proceeds of the life insurance policy.

In June 2011, the life insurance company filed an interpleader action in federal court and tendered into the registry of the United States District Court for the Eastern District of Texas, Sherman Division, the disputed life insurance proceeds payable under the policy and the accrued interest—a total of $377,897.26. Based on the agreement of both appellant and appellee, the insurance company was dismissed from the action.

Appellant moved for summary judgment in the federal court action, arguing the ERISA

statute required the proceeds of the life insurance policy be paid to her. The federal court issued a memorandum opinion on September 27, 2012, that granted appellant's motion for summary judgment and ordered the life insurance proceeds distributed to appellant. Although the court rejected appellee's arguments, it concluded, in part:

> Nonetheless, the Court agrees with Didyk that, as to any claims regarding the enforcement of the Agreed Final Decree of Divorce under Chapter 9 of the Texas Family Code and for the suit for breach of contract against Wendy Jeanelle Hennig, the proper forum is in the State Court Action pending in the 40lst District Court of Collin County, Texas. *See Kennedy*, 555 U.S. at 300, 129 S.Ct. at 875 ("Nor do we express any view as to whether the Estate could have brought an action in state or federal court against Liv to obtain the benefits after they were distributed."). The Court, therefore, does not make any finding here that Hennig is ultimately entitled to the insurance benefits. That is a matter for the state court to determine. The Court's role here is limited—to distribute the funds as the ERISA plans requires. Whether Hennig is obligated to turn those funds over (and the consequences for any failure to do so) falls under the divorce Decree which is not a matter over which this Court has jurisdiction.

*Unam Life Ins. Co. of America v. Wendy Jeanelle Hennig and Michael Didyk, as Independent Administrator of the Estate of Matthew Michael Didyk*, No. 4:11CV366, slip op. at 7 (E.D. Tex. September 27, 2012). In a final judgment signed on October 24, 2012, the federal court ordered the clerk of the court to pay the interpleaded funds to appellant.

Appellee filed this lawsuit in the same Collin County district court that signed the decree of divorce between appellant and decedent. Appellee's original petition, filed on January 12, 2012, initially sought recovery of the life insurance proceeds pursuant to Chapter 9 of the Texas Family Code and breach of contract. After the federal court issued its memorandum opinion, the petition was amended (on November 19, 2012) to add that, under Texas Family Code § 9.301, the designation of appellant as beneficiary was not effective as a matter of law. In response, appellant amended her answer to plead, in addition to a general denial, the affirmative defenses of ERISA preemption of § 9.301 and res judicata based on the federal court's memorandum opinion.

–4–

A non-jury trial was held in the 401st district court on December 6, 2012. Staci Fletcher, the decedent's administrative assistant for eleven years, was employed by the same company as the decedent and had the same life insurance coverage. She testified[1] that sometime in late October or early November of 2008, she assisted the decedent in logging into the computer system to change his insurance benefits. After accessing the decedent's insurance benefits, they learned appellant was still his designated beneficiary. Fletcher testified that the decedent "was very angry and frustrated with himself" when he made this discovery, and "couldn't believe that he never remembered to change it before." They called the decedent's father, appellee, to obtain his social security number for the purpose of effecting a beneficiary change. Fletcher testified that she was sitting beside the decedent and watched him as he logged into the computer system concerning his benefits and made the change to remove appellant as the beneficiary and replace her with appellee. Fletcher testified that the decedent "just completed the information on the computer system," and that she believed the beneficiary information had been changed.

After the decedent's death, however, Fletcher learned the actions he took to change the beneficiary designation were ineffective. Fletcher testified that an employee was required to download a form, sign it, and send it to the insurance company. Unless the employee followed those steps, the beneficiary change was incomplete and ineffective.[2] There was no doubt in

---

[1] In addition to Fletcher, the decedent's father, mother, best friend, appellant, and a friend of both the decedent and appellant, also testified at the hearing.

[2] The decedent's life insurance policy provided in part:

**How Do You Designate Or Change A Beneficiary? (Beneficiary Designation)**

At the time you become insured, you should name a beneficiary on your enrollment form for your death benefits under your life insurance. You may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form. However, if we have taken any action or made any payment before your Employer receives that form, that change will not go into effect.

It is important that you name a beneficiary and keep your designation current. If more than one beneficiary is named and you do not designate their order or share of payments, the beneficiaries will share equally. The share of a beneficiary who dies before you, or the share of a beneficiary who is disqualified, will pass to any surviving beneficiaries in the order you designated.

If you do not name a beneficiary, or if all named beneficiaries do not survive you, or if your named beneficiary is

Fletcher's mind that the decedent thought he changed the beneficiary designation in his policy.

On February 25, 2013, the trial court signed the final judgment and made findings of fact and conclusions of law that the court dictated into the record. Subsequently, on April 12, 2013, the trial court signed further supplemental findings of fact and conclusions of law in addition to those dictated into the record. The trial court ordered the life insurance proceeds, which had been deposited into the registry of the court, awarded to appellee, plus interest.[3]

## DISCUSSION

### *Standards of Review*

The findings of fact entered in this case "are of the same force and dignity as a jury's answers to jury questions." *Lambright v. Trahan*, 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). We review the findings of fact by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)).

We review de novo a trial court's conclusions of law to determine if the trial court drew the correct legal conclusions from the facts. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence; incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id.*; *see also May v. Buck*, 375 S.W.3d 568, 573 (Tex. App.—Dallas 2012, no pet.).

---

disqualified, your death benefit will be paid to your estate.

[3] The trial court's judgment awarded the proceeds from the life insurance policy plus "interest earned during the deposit of those funds, by virtue of the cause of action alleged in this matter."

*I. ERISA Preemption*

In her first issue, appellant contends the trial court erred as a matter of law by failing to give effect to the decedent's designation of appellant as the beneficiary of the life insurance proceeds, and by negating the designation pursuant to 9.301 of the Texas Family Code, because section 9.301 is preempted by the Employee Retirement Income Security Act (ERISA). *See* 29 U.S.C. §§ 1001–1461. Appellant attacks the trial court's conclusions of law numbers 1, 2, 3, and 6, which read as follows:

> 1. That regarding any claims for enforcement of the *Agreed Final Decree of Divorce* under Chapter 9 of the Texas Family Code and for the suit for breach of contract against Wendy Jeanelle Hennig, the proper forum is in the 401st District Court of Collin County, Texas. This is the exact same conclusion that the United States District Court for the Eastern District of Texas reached in its *Memorandum Opinion and Order* on September 27, 2012.

> 2. That any federal law issue regarding the life insurance proceeds on the decedent's life, was addressed and resolved by the United States District Court for the Eastern District of Texas, in the related cause of action, specifically when it dismissed the plan administrator UNUM Life Insurance, with a recovery of its costs, and then distributed the life insurance proceeds to Wendy Jeanelle Hennig in a manner consistent with the provisions of the Employee Retirement Income Security Act of 1974 (ERISA).

> 3. That after the discharge of the plan administrator and the distribution of the funds to Wendy Jeanelle Hennig, that the provisions of ERISA do not preempt the application of Texas law as to the remaining issues before this Court.

> . . . .

> 6. That pursuant to the express provisions of § 9.301 of the Texas Family Code the designation of Hennig as a beneficiary of the life insurance policy in question, originally made on or about April 25, 2005 is not effective as a matter of law, following the parties divorce on May 15, 2007.

Section 9.301 of the Texas Family Code, captioned "Pre-Decree Designation of Ex-Spouse as Beneficiary of Life Insurance," provides that if an insured's spouse is designated as a life insurance beneficiary but the couple later divorces or their marriage is annulled, the earlier designation of the former spouse as a policy beneficiary is not effective unless (1) "the decree

–7–

designates the insured's former spouse as the beneficiary"; (2) "the insured redesignates the former spouse as a beneficiary after rendition of the decree"; or (3) "the former spouse is designated to receive the proceeds in trust for, on behalf of, or for the benefit of a child or a dependent of either former spouse." *See* TEX. FAM. CODE ANN. § 9.301(a). If a designation is not effective under subsection (a), the policy proceeds are payable to the named alternative beneficiary, or if there is none, the proceeds are payable to the insured's estate. *Id*. § 9.301(b). Section (c) is a "safe harbor" provision that limits an insurer's liability for payment of the proceeds. It provides:

> An insurer who pays the proceeds of a life insurance policy issued by the insurer to the beneficiary under a designation that is not effective under Subsection (a) is liable for payment of the proceeds to the person or estate provided by Subsection (b) only if: (1) before payment of the proceeds to the designated beneficiary, the insurer receives written notice at the home office of the insurer from an interested person that the designation is not effective under Subsection (a); and (2) the insurer has not interpleaded the proceeds into the registry of a court of competent jurisdiction in accordance with the Texas Rules of Civil Procedure.

*Id*. § 9.301(c).

The trial court in this case concluded the beneficiary designation in the decedent's life insurance policy was ineffective as a matter of law under 9.301, but the court also concluded appellant breached the contract contained in the agreed final decree of divorce, and that appellee was entitled to recover the life insurance proceeds because of the breach. As discussed in part two of this opinion, appellant agreed to waive all rights to the decedent's life insurance policy in the divorce decree. This is an issue of contract law. *See Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986) (we interpret marital property agreements in divorce decrees under law of contracts). Therefore, we need not resolve the parties' dispute over whether, as applied, section 9.301 is preempted by ERISA because the divorce decree specifically provided that appellant lost all rights to the life insurance policy. *See Olmstead v. Napoli*, 383 S.W.3d 650, 654–55 (Tex. App. —Houston [14th Dist.] 2012, no pet.) (declining to determine whether section 9.302, which

–8–

voids certain spousal beneficiary designations upon divorce, divested former wife of her rights as designated beneficiary of former husband's IRA because, in the parties' divorce decree, former wife agreed to forfeit all rights to the IRA she may have had). Because the ERISA plan administrator has distributed the proceeds to appellant, the named beneficiary, as required by ERISA, the preemption question we must address is whether ERISA preempts a post-distribution action against appellant.

ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument" that "specif[ies] the basis on which payments are made to and from the plan." 29 U.S.C. § 1102(a)(1), (b)(4). ERISA directs the plan administrator to discharge his duties "in accordance with the documents and instruments governing the plan." *Id.* § 1104(a)(1)(D). In *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285, 299–304 (2009), the Supreme Court held that an ERISA plan administrator must distribute benefits to the beneficiary named in the plan, regardless of any state-law waiver purporting to divest that beneficiary of his right to the benefits. *Kennedy*, however, explicitly left open the question of whether the decedent's estate could sue the designated beneficiary of an ERISA-governed policy after the funds were distributed. *See id.* at 299 n.10 ("Nor do we express any view as to whether the Estate could have brought an action in state or federal court against [the plan beneficiary] to obtain the benefits after they were distributed.").

In *Kennedy*, the Supreme Court emphasized three important ERISA objectives: (1) "simple administration," (2) "avoid[ing] double liability [for plan administrators]," and (3) "ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules." *Id.* at 301 (some alterations in original) (citation omitted); *Andochick v. Byrd*, 709 F.3d 296, 300 (4th Cir. 2013). As the Fourth Circuit has stated, allowing post-distribution lawsuits to enforce state-law waivers does not interfere with ERISA's objectives:

> Allowing post-distribution suits to enforce state-law waivers does nothing to interfere with any of these objectives. For in situations like that at issue here, *Kennedy* merely dictates that the plan administrator distribute plan benefits to the named beneficiary. This ensures simple administration regardless of whether post-distribution suits are permitted, because the plan administrator would have no role in any post-distribution proceedings. For the same reason, post-distribution suits do not expose the plan administrator to double liability—only the named beneficiary has any claim against the plan administrator.

*Andochick*, 709 F.3d at 299. Additionally, "the goal of ensuring that beneficiaries 'get what's coming quickly' refers to the expeditious distribution of funds *from plan administrators*, not to some sort of rule providing continued shelter from contractual liability to beneficiaries who have *already received* plan proceeds." *Estate of Kensinger v. URL Pharma, Inc.*, 674 F.3d 131, 136 (3d Cir. 2012) (emphasis in original). Allowing post-distribution suits against plan beneficiaries based on pre-distribution waivers does not prevent those beneficiaries from "get[ting] what's coming quickly." *Smalley v. Smalley*, 399 S.W.3d 631, 639 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Andochick*, 709 F.3d at 300; *Estate of Kensinger*, 674 F.3d at 136).

Indeed, a number of state and federal courts have concluded that ERISA does not preempt post-distribution lawsuits against the beneficiaries of ERISA-governed policies. *See, e.g., Andochick*, 709 F.3d at 299–301 (ERISA does not preempt post-distribution suits against ERISA beneficiaries alleging waiver); *Central States, Se. & Sw. Areas Pension Fund v. Howell*, 227 F.3d 672, 679 (6th Cir. 2000) (ERISA did not preempt imposition of a constructive trust after benefits had been distributed in accordance with plan documents); *Flesner v. Flesner*, 845 F. Supp. 2d 791, 799–802 (S.D. Tex. 2012) (ERISA did not preempt breach of contract claim brought by executor of estate against beneficiary of ERISA-governed life insurance policies because claim was based on beneficiary's breach of divorce decree and proceeds of the policies had been distributed); *Partlow v. Person*, 798 F. Supp. 2d 878, 885 (E.D. Mich. 2011) ("The law recognizes a distinction between a plan administrator's obligation to pay over benefits to a named plan beneficiary and that beneficiary's entitlement to keep those funds thereafter.");

–10–

*Appleton v. Alcorn*, 728 S.E.2d 549, 552 (Ga. 2012) ("In this case, since the proceeds of the ERISA-covered plans were paid out to appellant and were no longer in the control of the plan administrator," the trial court erred when it dismissed breach of contract claim brought by father's estate against his second wife arguing she contractually waived her right to retain the proceeds of deceased father's employer-provided 401(k) plan and life insurance policy.); *Sweebe v. Sweebe*, 712 N.W.2d 708, 712 (Mich. 2006) ("[W]hile a plan administrator must pay benefits to the named beneficiary as required by ERISA, this does not mean that the named beneficiary cannot waive her interest in retaining these proceeds. Once the proceeds are distributed, the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds."); *see also Smalley*, 399 S.W.3d at 638 ("[W]e conclude that permitting post-distribution suits accords with the objectives discussed in *Kennedy*.").

To support her preemption claim, appellant cites *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001), *Boggs v. Boggs*, 520 U.S. 833 (1997), and *Barnett v. Barnett*, 67 S.W.3d 107 (Tex. 2001). All three cases, however, pre-date *Kennedy*, which expressly left open the question of whether an insured's estate could bring suit against the designated beneficiary of an ERISA-governed policy after the funds were distributed by the plan administrator. Moreover, careful examination of all these cases shows that appellant's reliance on them is misplaced.

In *Boggs*, the Court held that ERISA preempted a Louisiana community property law that would have allowed a plan participant's first wife to transfer by will her interest in the participant's undistributed retirement benefits. 520 U.S. at 833. *Boggs*, however, involved a very different situation from the one we face here. Operation of the community property law at issue in *Boggs* would have resulted in the diversion of plan benefits without the consent of the plan participant. *See id.* at 852 (noting that, unless ERISA preempted the state statute, "retirees could find their retirement benefits reduced by substantial sums because they have been diverted

–11–

to testamentary recipients"). Additionally, as other courts have noted, the interest at issue in *Boggs* was an interest in *undistributed* pension plan benefits, while in the present case the question is whether appellee can pursue a post-distribution action against appellant. *See Estate of Kensinger*, 674 F.3d at 138 (distinguishing *Boggs*).

In *Barnett*, the Supreme Court of Texas held that ERISA preempted a claim by one seeking to impose a constructive trust on insurance policy proceeds to remedy a constructive fraud on the community. *See* 67 S.W.3d at 112–22. The *Barnett* case, however, did not involve a divorce decree or an alleged waiver by a former spouse in a divorce decree. *See id.* at 109–110. *Barnett* cited cases dealing with such waivers, but the Texas Supreme Court subsequently concluded ERISA did not preempt claims under federal common law to enforce a waiver by an ex-spouse in a divorce decree of her interest in ERISA plan benefits. *Keen v. Weaver*, 121 S.W.3d 721, 724–29 (Tex. 2003), *abrogated by Kennedy*, 555 U.S. at 299–304. *Kennedy* abrogated *Keen* to the extent it allowed such waiver claims to be asserted against the ERISA plan administrator. *Smalley*, 399 S.W.3d at 639. Yet, *Keen* and *Kennedy* at least show that appellant's reliance on *Barnett* in this instance is dubious, if not misplaced. *See Kennedy*, 555 U.S. at 299–304; *Keen*, 121 S.W.3d at 726; *Smalley*, 399 S.W.3d at 639.

*Egelhoff* is no more helpful to appellant. In *Egelhoff*, the Supreme Court held that ERISA preempted the application of a state statute that automatically revoked, upon divorce, any designation of a spouse as a beneficiary of an ERISA benefit plan. 532 U.S. at 146–50. The Court based its holding on the fact that the state statute required administrators to "pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents," *id.* at 147, which creates a direct conflict with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents. *Id.* at 147, 150.

In this case, unlike *Egelhoff*, appellee does not argue that the plan administrator should

have paid the contested funds to anyone other than the named beneficiary; rather, he argues that the named beneficiary, having received those funds, was not entitled to keep them because she contractually waived that right in the agreed final decree of divorce. Post-distribution suits of the kind brought here do not require ERISA plan administrators to pay life insurance benefits to anyone other than the named beneficiary; they simply seek to enforce the consensual terms of a prior contractual agreement to prevent the named beneficiary from retaining the proceeds. Allowing post-distribution suits to enforce state-law waivers does not interfere with ERISA's objectives. *See Andochick*, 709 F.3d at 301. Accordingly, we conclude that this case does not implicate ERISA's preemption provisions, but, instead, is simply a contractual dispute between two parties. We now turn to that question. We overrule appellant's first issue.

## II. The Agreed Final Decree of Divorce

In her third issue, appellant contends the trial court erred as a matter of law by finding and concluding appellant breached a contract, and in awarding the disputed life insurance proceeds to appellee. Appellant attacks the trial court's finding of fact number 18, which reads as follows:

> 18. That based on the evidence presented and the applicable law, Wendy Jeanelle Hennig breached the contract with Matthew Michael Didyk, Deceased as contained in the *Agreed Final Decree of Divorce* of May 15, 2007, by claiming the benefits of the life insurance policy in question.

Appellant also challenges the following conclusions of law:

> 7. That based on the evidence presented and the applicable law, Wendy Jeanelle Hennig breached the contract with Matthew Michael Didyk, Deceased as contained in the *Agreed Final Decree of Divorce* of May 15, 2007 and Petitioner, Miro Didyk, as the executor and primary beneficiary of the estate of Matthew Michael Didyk, Deceased, is entitled to recovery [of] the life insurance proceeds as a result of that breach.
>
> 8. That Petitioner, Miro Didyk, as the executor and primary beneficiary of the estate of Matthew Michael Didyk, Deceased is entitled to Judgment based on his action for enforcement of the *Agreed Final Decree of Divorce* under the provisions of Chapter 9 of the Texas Family Code and for breach of the contract

–13–

entered into between Matthew Michael Didyk and Wendy Jeanelle Hennig as contained in the *Agreed Final Decree of Divorce* of May 15, 2007.

Appellant makes two related arguments here: (1) she surrendered her rights to the life insurance *policy* in the divorce decree but not the *proceeds* of the policy; and (2) the language used in schedule "A," paragraph 5 of the divorce decree does not control the disposition of the policy because (a) life insurance proceeds are not specifically mentioned in paragraph 5; (b) the parties expressed their agreement regarding life insurance policies in paragraph 9 of schedule "A"; (c) the specific language in paragraph 9 prevails over the general language in paragraph 5; and (d) the items listed in paragraph 5 are not similar in nature to life insurance policies, which were addressed in paragraph 9.

An agreed property division, although incorporated into a final divorce decree, is treated as a contract and is controlled by the rules of construction applicable to ordinary contracts. *Allen*, 717 S.W.2d at 313; *In re R.F.G.*, 282 S.W.3d 722, 725 (Tex. App.—Dallas 2009, no pet.). Our primary concern in interpreting a contract is to ascertain the true intent of the parties. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011); *In re R.F.G.*, 282 S.W.3d at 725. We construe the decree as a whole to harmonize and give effect to the entire decree. *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003); *Toler v. Sanders*, 371 S.W.3d 477, 480 (Tex. App.—Houston [1st Dist.] 2012, no pet.). If, read as a whole, the divorce decree's terms are unambiguous, we must give effect to the order in light of the literal language used. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *In re C.P.Y.*, 364 S.W.3d 411, 413 (Tex. App.—Dallas 2012, no pet.). A contract is ambiguous if its meaning is uncertain or it is reasonably susceptible to more than one interpretation. *Coker*, 650 S.W.2d at 393; *see also Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012); *In re R.F.G.*, 282 S.W.3d at 725. Whether a divorce decree is ambiguous is a question of law we review de novo. *Coker*, 650 S.W.2d at 394; *see also Shanks*, 110 S.W.3d at 447.

–14–

Beginning with appellant's argument that she gave up her rights to the life insurance policy but not the proceeds, appellant cites *Gillespie v. Moore*, 635 S.W.2d 927, 928 (Tex. App.—Amarillo 1982, writ ref'd n.r.e.), and the cases cited therein for the proposition that a divorcing "spouse who conveys the ownership interest in a policy does not necessarily lose the right to receive the policy proceeds as the designated beneficiary." *Id*. (citing *Pitts v. Ashcraft*, 586 S.W.2d 685, 696 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.); *Partin v. de Cordova*, 464 S.W.2d 956, 956–57 (Tex. Civ. App.—Eastland 1971, writ ref'd)). In *Gillespie*, a former wife sued the insurance company of her deceased former husband, claiming she was the beneficiary of his life insurance policy. 635 S.W.2d at 927. The property settlement agreement in the divorce decree provided that the former husband "shall have and hold as his separate property," and that the former wife "releases and transfers unto the [former husband] any and all interest and equities which she may have in and to such life insurance policies, or the proceeds thereof, and agrees that she will in no event ever claim any interest in any of such policies or the proceeds thereof." *Id*. at 928. Prior to his death, the former husband did not remove his former wife as the designated beneficiary of his life insurance policy. *Id*. The court of appeals held the former wife was not entitled to the proceeds of the life insurance policy. *Id*. It concluded that "[a] spouse who conveys the ownership interest in a policy does not necessarily lose the right to receive the policy proceeds as the designated beneficiary," but "[t]he latter right can be lost . . . if it is clear from the agreement that the spouse also intended to surrender any claim to the proceeds as the designated beneficiary." *Id*. Because the former wife specifically agreed that she would in no event claim an interest in the policy or its proceeds, the settlement agreement unambiguously showed that she surrendered both ownership and beneficiary rights. *Id*.

In *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237 (Tex. App.—Austin 2007, pet. denied), the Austin court discussed *Pitts* and *Partin* but declined to follow them, choosing

instead to follow a decision from this Court, *McDonald v. McDonald*, 632 S.W.2d 636 (Tex. App.—Dallas 1982, writ ref'd n.r.e.). In *McDonald*, the divorce decree between an insured and his former wife expressly awarded "as [insured's] sole and separate property, specific items, including, 'any and all insurance, pensions, retirement benefits, and other benefits arising out of [insured's] employment.'" *McDonald*, 632 S.W.2d at 637. The insured died twenty-five days after the divorce in an automobile accident. *Id*. At the time of his death, the insured had not changed his former wife's designation as the beneficiary on two life insurance policies. *Id*. at 637–38. We noted that the two life insurance policies were policies available to the insured "by reason of his employment." *Id*. at 638. We thus concluded that "the effect of the divorce judgment was to divest [the former wife] of her then existing rights in the future proceeds of the two policies in question," and that the divorce decree terminated the former wife's "right to the proceeds of the two policies" where she was the named beneficiary. *Id*. at 638–39. The *Spiegel* court thought our approach in *McDonald* was "better because it incorporates the presumption that people who are divorcing intend to revoke beneficiary designations in favor of their soon-to-be ex-spouses in the absence of explicit language to the contrary," and that this "presumption comports with common sense and has been mandated by the legislature in the vast majority of cases." *Spiegel*, 228 S.W.3d at 245 (citing TEX. FAM. CODE ANN. §§ 9.301, 9.302; *Jernigan v. Scott*, 518 S.W.2d 278, 284 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.)). We are, of course, bound by our prior decisions. *See Owen v. Jim Allee Imports, Inc.*, 380 S.W.3d 276, 284 (Tex. App.—Dallas 2012, no pet.); *Cleveland v. Live Oak State Bank*, No. 05–11–00665–CR, 2013 WL 1803733, at *3 (Tex. App. —Dallas 2013, no pet.) (mem. op.).

The decree in this case resembles the decree in *McDonald*. However, it actually goes further than the decree in *McDonald* because it provided that the decedent was "awarded as his sole and separate property all right, title, interest, and claim in and to the property listed in

–16–

Schedule 'A,'" and appellant was "divested of all right, title, interest, and claim in and to that property." The property listed in schedule "A" included, in paragraph 5, "all sums," matured or unmatured, accrued or unaccrued, vested or otherwise, and all increases and proceeds, and "any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the husband's past, present, or future employment," as well as, in paragraph 9, "[a]ll policies of life insurance (including cash values) insuring the husband's life." We conclude that this language shows it was the parties' intent that appellant surrendered not only her rights regarding the life insurance policy, but also any claim to future proceeds she might have had as the designated beneficiary of the policy. *See McDonald*, 632 S.W.2d at 639.

We reach this conclusion notwithstanding appellant's assertion that the language in schedule "A," paragraph 5 of the divorce decree is "inapplicable" to this dispute. Appellant partly relies on the doctrine of *ejusdem generis*, arguing the "specific" language in paragraph 9 regarding life insurance policies prevails over the "general" language in the preceding paragraph 5. *Ejusdem generis* is a rule of contract construction which provides that, if words of a specific meaning are followed by general words, the general words are interpreted to mean only the class or category framed by the specific words. *See Stanford v. Butler*, 181 S.W.2d 269, 272 (Tex. 1944); *Hussong v. Schwan's Sales Enterprises, Inc.*, 896 S.W.2d 320, 325 (Tex. App.—Houston [1st Dist.] 1995, no writ). The doctrine of *ejusdem generis* applies, however, only when the contract has been found to be ambiguous. *See Hussong*, 896 S.W.2d at 325; *Corpus Christi v. Bayfront Assoc.*, 814 S.W.2d 98, 104 (Tex. App.—Corpus Christi 1991, writ denied). It does not apply when, as in this case, the parties' intent is apparent from the agreement. *See Hussong*, 896 S.W.2d at 325. Moreover, *ejusdem generis* applies when words of a specific and particular

–17–

meaning are followed by general words and an ambiguity exists, but we have found no authority applying it when, as appellant is attempting to argue here, general words (in paragraph 5) are followed by specific words (in paragraph 9). *See Corpus Christi*, 814 S.W.2d at 104; *Jones v. St. Paul Ins. Co.*, 725 S.W.2d 291, 292 (Tex. App.—Corpus Christi 1986, no writ).

Appellant also argues that paragraph 5 is inapplicable because the parties expressed their agreement regarding life insurance policies in paragraph 9, life insurance policies are not specifically mentioned in paragraph 5, and the items listed in paragraph 5 are not similar in nature to life insurance policies. The problem with these arguments, however, is that the language in paragraph 9 cannot be read in isolation. Rather, we must construe the decree as a whole to harmonize and give effect to the *entire* decree. *Shanks*, 110 S.W.3d at 447; *Coker*, 650 S.W.2d at 393.

The divorce decree in this case shows that the parties intended to sever their financial relationship. Schedules "A" and "B," of the divorce decree, in addition to listing a number of work-related benefits and investments that are each spouse's separate property, both include the language "*or other benefits existing by reason of the* [husband's or wife's] *past, present, or future employment*" (emphasis added). It is undisputed that the decedent's life insurance policy was a benefit obtained through his employment, and that appellant made claim to the benefits of the policy. Furthermore, the benefits of the life insurance policy necessarily "exist[ ] by reason of the husband's past, present, or future employment." We also note that the court's findings of fact 15, 16, and 17 state that the underlying contract contained in the divorce decree was negotiated by the parties while represented by independent counsel, there was no evidence the contract was made by mistake, duress, or fraud, and that it was a valid contract with consideration given and received by each party, and therefore "fully enforceable." These three findings are unchallenged on appeal. *See Wells Fargo Bank N.W., N.A. v. RPK Capital XVI,*

–18–

*L.L.C.*, 360 S.W.3d 691, 698 (Tex. App.—Dallas 2012, no pet.) ("Unchallenged findings of fact are binding on the appellate court, unless the contrary is established as a matter of law or there is no evidence to support the finding.").

We conclude that, given the unambiguous language in the divorce decree, appellant waived her ownership interest regarding the decedent's life insurance policy and any claim to future proceeds. *See McDonald*, 632 S.W.2d at 638–39; *see also Olmstead*, 383 S.W.3d at 654–55 (spouse who conveys the ownership interest in a policy does not necessarily lose right to receive policy proceeds as designated beneficiary but may lose that right if it is clear from marital property agreement that spouse also intended to surrender any claim to proceeds as designated beneficiary); *Spiegel*, 228 S.W.3d at 245 (allocation of property in mediated divorce settlement agreement between husband and wife revoked husband's beneficiary status as to non-probate property awarded to the wife, such that he had no beneficiary claim to the property following wife's death; agreement contained language indicating parties' intent to immediately and completely sever their financial relationship and included a broad release by each party of any future claims or demands against the other party); *Sanderlin v. Sanderlin*, 929 S.W.2d 121, 122–23 (Tex. App.—San Antonio 1996, writ denied) (any rights the former wife may have had in retirement funds and proceeds were extinguished by marital property agreement in divorce decree; agreement was "all-encompassing" and "intention of the parties with regard to [former husband's] teacher retirement is clear;" former wife "is not to receive any of it."); *Jernigan*, 518 S.W.2d at 284 ("The most reasonable intention which can be ascribed to parties contemplating separation and desirous of adjusting questions relating to property rights is an intention to make an arrangement relating to the future as well as the present and past, rather than an intention limited to existing conditions with the expectation that, in the future, the parties would periodically come together for the purpose of agreement relating to property thereafter

acquired."). Thus, the trial court did not err by concluding appellant breached the divorce decree and that appellee was entitled to recovery of the life insurance proceeds. We overrule appellant's third issue.

### III. Res Judicata

In her second issue, appellant argues that the trial court erred as a matter of law by failing to give res judicata effect to the federal court's decision awarding appellant the life insurance proceeds. *See Unam*, No. 4:11CV366, slip op. at 7. The case cited by appellant, *San Antonio Independent School District v. McKinney*, 936 S.W.2d 279, 281 (Tex. 1996), discusses the elements used in determining whether to apply res judicata where there has been a prior federal court judgment. However, the opinion also states that even if all the other requirements are met, res judicata does not apply if the federal court lacked jurisdiction over the omitted state law claims, or possessed jurisdiction but would clearly have declined to exercise that jurisdiction as a matter of discretion. *McKinney*, 936 S.W.3d at 281. As we pointed out earlier, the federal court specifically declined to exercise jurisdiction over appellant's state law claims, stating that the proper forum for enforcement of the divorce decree was the then-pending action in the Collin County district court; that it was not making any findings appellant was ultimately entitled to the insurance proceeds, which was a matter for the state court to decide; and that the federal court's role was limited to distributing the funds as ERISA required. *See Unam*, No. 4:11CV366, slip op. at 7. Because the federal court unambiguously declined to exercise jurisdiction over appellant's state laws claims, the trial court correctly concluded the doctrine of res judicata does not apply in this instance. We overrule appellant's second issue.

We affirm the trial court's judgment.

130656F.P05

_____
LANA MYERS
JUSTICE

–20–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WENDY JEANELLE HENNIG, Appellant

No. 05-13-00656-CV       V.

MICHAEL "MIRO" DIDYK,
INDIVIDUALLY AND AS
INDEPENDENT ADMINISTRATOR OF
THE ESTATE OF MATTHEW MICHAEL
DIDYK, DECEASED, Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-51025-07.
Opinion delivered by Justice Myers.
Justices Lang and Brown participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MICHAEL "MIRO" DIDYK, INDIVIDUALLY AND AS INDEPENDENT ADMINISTRATOR OF THE ESTATE OF MATTHEW MICHAEL DIDYK, DECEASED recover his costs of this appeal from appellant WENDY JEANELLE HENNIG.

Judgment entered this 28th day of July, 2014.